## ALABAMA & V. RY. CO. *v.* KROPP.

[92 South. 691, No. 22673.]

1. EVIDENCE. *Written release of railroad company from liability cannot be varied by oral evidence to show contemporaneous oral agreement.*

Where a person injured by a railroad company executed a written release, after full time for consideration, consultation, and investigation, for a valuable consideration, the release being contractual in its recitals, it cannot be varied, contradicted, or added to by oral evidence to show a contemporaneous oral agreement to give the party injured a life job in the service of the company. *English* v. *N. O. & N. E. R. Co.,* 100 Miss. 575, 56 South. 665, cited.

2. RELEASE. *Held that servant could not impeach written release from liability for personal injuries on ground of fraud in procurement.*

Where a person injured by a railroad has full time to learn the law and facts of his injury and executes a written release contractual in its recitals as to consideration, he cannot impeach the written contract for fraud in its procurement by showing the agent of the railroad company stated that the law forbade inserting in a release an agreement to give such person a life job with the railroad, or that the company was not liable for the injury, where there was no confidential or fiduciary relation between the parties, and where each was dealing with the other at arm's length.

3. RELEASE. *Where injured servant seeks to rescind release executed for fraud, proof must be clear and convincing.*

Where a person injured by a railroad executes a release for a valuable consideration and seeks to rescind for fraud in the procurement of a release, the proof of fraud must be clear and convincing, and where the proof of fraud is contradicted by disinterested witnesses and also by the circumstances of the case, the sole testimony of the injured party given several years after the contract will not satisfy the rule.

4. *Release. Party induced to enter contract by fraudulent representations must rescind promptly and return fruits of contract; facts held to show ratification.*

Where a party has been induced to enter a contract by fraudulent representations, he may, upon discovering the fraud, rescind, but he must act promptly upon discovering the facts, and must use reasonable diligence to learn the facts, and, if he retain the fruits of the

contract after such knowledge or fails to exercise reasonable diligence under the circumstances, he will be held to have ratified the contract. The facts in this case show ratification under this rule.

APPEAL from chancery court of Lauderdale county.

HON. G. C. TANN, Chancellor.

Action by Lee Kropp, against the Alabama & Vicksburg Railway Company. Verdict for plaintiff, and the defendant appeals. Reversed and dismissed.

*Bozeman & Cameron,* for appellant.

The court below erred in overruling the motion of defendant, as shown by the special bill of exceptions (page 201) to exclude the testimony of the plaintiff as to the promise of future employment made to him before the execution of the release because the effect of such testimony was to vary the terms of a written contract by parole testimony and its further effect was to add to a written agreement by parole testimony and because such testimony was otherwise incompetent and irrelevant.

The testimony shows a total absence of any attendant facts or circumstances which ordinarily accompany fraudulent procurements of releases from injured persons. The injured person in this case was not ignorant, was not suffering, was not under the influence of opiates or drugs, was not in poverty or distress, was not without time to deliberate, was not without access to friends and lawyers, and was not hurried or pressed to make a settlement. There is absolutely nothing in this case tending in any way to establish a fraudulent procurement of a release, except the uncorroborated testimony of the plaintiff himself, which is contradicted by every other witness and by every attendant circumstance.

No statement was made with Kropp and no release was taken from him until more than nine months after the accident and injury. According to Kropp's testimony, he had been able to go back to work in one month after his

accident.      He had every opportunity to consult with
friends and lawyers as to liability and as to his rights in
the premises.      He had talked the matter over with his
wife and others, and although he testifies that he had never
advised with an attorney about it, it does appear that at
least one attorney came to Kropp to get the case, but with-
out success.

Kropp's charge that Robertson, defendant's claim agent,
fraudulently induced him to sign the release by promising
him life-time employment is not only flatly denied by Rob-
ertson and by Payen and by Brooke, but is utterly incon-
sistent with the course of dealings between Kropp and
the claim agents of the defendant railroad, and negotia-
tions which led up to the execution of the release.

Kropp's uncorroborated testimony as to what was said
in that personal interview leading up to the execution of the
release, rendered his solemn written contract signed by
himself in the presence of two witnesses and acquiesced
in by him for nearly six years, no more binding in the eyes
of a jury than a chain of daisies woven by playing chil-
dren.      Pity it is, but 'tis true, that average Mississippi
juries of today have no more regard for solemn written
contracts, signed and witnessed, and acquiesced in for
years, when they are given the right to avoid them, than
vamping Rose of song fame, had for Heart: "She don't care
for a heart, she just tears it apart."

The uncorroborated statement of Kropp that he was
promised employment for life as an inducement for him
to execute the release is not only positively denied by Rob-
ertson, who is alleged to have made the promise, and by
Brooke, his stenographer who wrote the release and closed
the matter with Kropp the day after his interview with
Robertson, and by Jackson, who also witnessed Kropp's
signature, but .it is utterly inconsistent with the negotia-
tions and correspondence leading up to the execution of the
release.

In support of our contention that this suit cannot be
maintained because of Kropp's failure to refund the one

hundred and twenty-five dollars paid him, we cite the case of *Harrison* v. *Alabama Midland Ry Co.,* 40 So. 394. We cite, also, the case of *Smith* v. *St. L. & S. R. R. Co.,* 112 Miss. 878.

As in the *Smith case,* 112 Miss., so in this case the release is, at most, voidable only and not void, and before any rescission thereof can be obtained, the consideration received under the terms of said release must first be returned. *Parker* v. *Northern Pacific Ry. Co.,* 65 Fed. 460, *Vandevelden* v. *Ry. Co.,* 61 Fed. 54 (59); *Babcock* v. *Farwell,* 245 Ill. 14 (40); *Rabbittee* v. *A. G. S. R. R Co.,* 47 So. 573; *Wells* v. *Royer Wheel Co.,* 114 S. W. 737.

In support of our contention that the testimony in this case shows that the release was ratified by Kropp and that he is now precluded from maintaining this suit, we cite the following: *A. & V. Ry. Co.* v. *Turnbull,* 71 Miss. 1039, *Jones* v. *Railway Co.,* 72 Miss. 22; *Turnbull case,* 71 Miss. 1039; *Taylor* v. *Blackman,* 12 S. R. 458.

We submit that as a matter of law the testimony in this case to the effect that the release in question was procured by fraud is neither clear nor convincing nor indubitable nor unmistakable, and is therefore insufficient to warrant the verdict of the jury. This must be manifest from a review of the case.

Ratification: Laches. In 4 R. C. L., page 514, section 26, the rule is thus stated: "Laches, acquiescence and Ratification. The rule is that where a party has been induced to enter into a contract by false and fraudulent representations, he may, upon discovering the fraud, rescind the contract; but the great weight of authority holds that if the party defrauded continues to receive benefits under the contract after he has become aware of the fraud, or if he otherwise conducts himself with respect to it as though it were a subsisting and binding engagement, he will be deemed to have affirmed the contract and waived his right to rescind. In other words, the party who has been misled, is required, as soon as he learns the truth, and discovers the falsity of the statements on which he relied, with all

reasonable diligence to disaffirm the contract and give the other party an opportunity of rescinding it, and of restoring both of them to their original position. The party deceived is not allowed to go on deriving all possible benefits from the transaction and then claim to be relieved from his own obligations by seeking its rescission."

For the errors which we have assigned, we respectfully submit that the judgment of the court below should be reversed; that this court should hold that the complainant, Kropp, has failed to show by testimony "clear, convincing, undubitable and unmistakable" that the release in question was procured by fraud, but that, on the contrary, the release was valid and had been ratified and affirmed by Kropp and that he had been guilty of such laches as to preclude his effort to repudiate it at this late day, and that judgment should be held entirely for the appellant.

*Fulton Thompson, J. Harvey Thompson* and *Robert H. Thompson,* for appellant.

The court below erred in not excluding from the jury all of the plaintiff's testimony on the motion of the defendant made when the complainant rested his case, as shown by the special bill of exceptions.

The question presented by this assignment has in many of its aspects already been discussed in this brief. The only remaining matter to be considered is whether the plaintiff should have been permitted to testify touching the negotiations which led up to the settlement as made and evidenced in writing. The facts as shown by the complainant are: That when an effort was made to consummate a settlement at Meridian, Mississippi, and when the claim agent of the defendant gave plaintiff the release for execution, the plaintiff insisted that the alleged promise to give him permanent employment should be incorporated in the writing and made a part and parcel of the written agreement had between the parties. To this the defendant's representative objected and stated, if the complainant's testimony be taken as true, that it was illegal to incorporate into the writing such a promise as the complainant

testified had been agreed upon. The complainant was not
satisfied then and there to execute the release as written,
containing no stipulation or provision on the subject of
future employment, and for the reason that it contained no
such provision he declined to execute it. He then returned
to his home in Newton and deliberated whether to execute
a release not containing a provision for future employ-
ment. He was not by duress or otherwise compelled to
execute the release and acquittance, but after deliberating
about it he decided that he would return to Meridian and
execute the release as written by the claim agent, although
it contained no terms on the subject of future employment.
He returned to Meridian and did execute the release, know
ing that it did not contain any provision on the subject of
his employment.

The question now before this court is whether, when
one party to a contract refuses to embody in it particular
terms which the other party insists shall be embodied in it,
and the party so insisting, after deliberation, yields his in-
sistence and assents to the contract as written and exe-
cutes the same, does he not, if permitted to testify that the
contract placed an obligation upon his adversary not writ-
ten in the paper, violate the well-established rules of law
that matters of previous negotiations, what was said and
done between the parties before the execution of a written
contract, are all merged into the writing, and that the
terms of a written contract cannot be varied by testimony
showing what was said and done which led up to the con-
tract in writing, agreed upon and executed by the parties?
Give due weight to the fact that the complainant's request
to have the written contract contain a promise to give him
employment was rejected and that he thereafter with full
knowledge of the facts executed the contract as written.

The case of *English* v. *New Orleans & Northeastern Rail-
road Company*, 100 Miss. 575, s. c., 56 So. 665, is largely
identical in its facts with the case at bar. This court in
that case decided that where a contract in writing is con-
tractual it cannot be varied by parol evidence. In that

case, as in this one, the plaintiff claimed to have suffered personal injuries at the hands of the defendant railroad company. In that case, as in this one, the plaintiff executed a release whereby in consideration of a sum of money he acquitted and released the railroad company from liability. This acquittance and release was executed by the plaintiff English some five hours after he had negotiated for a settlement with the president of the Railroad Company and the plaintiff claimed there as does the present complainant that an oral promise was made him by the railroad company to give him employment, which the railroad company failed to do. The written instrument in that case like the written instrument in this case, was not a mere receipt for money but was a release and acquittance of the railroad company, it was contractual in its terms, and the court held that it could not be varied by parol evidence. The release in this case, like the one in the English case, was contractual in its nature.

The difference in the two cases is this: in the Northeastern Railroad Case there was no charge of fraud. In this case fraud was charged, but it was denied. In the Northern Railroad Case this court held that parol testimony was inadmissible to show that at the time of the execution of the release and acquittance of the railroad company from liability there was an oral promise made by the railroad company to give the plaintiff future employment. If that were a correct decision, and it cannot reasonably be denied or disputed that it was correct, then in this case, in the absence of evidence that the receipt and acquittance was obtained by fraud, the same rule should be applied here, and the court below erred, therefore, and erred prejudicially to the appellant, in not sustaining the objection of the defendant in the court below to the introduction of testimony touching an oral agreement to give complainant employment. If, however, fraud having been charged in procuring the release, and if the complainant could not be controlled in the order of the introduction of his evidence, and if it cannot be said that the testimony touching the alleged

oral agreement was improperly admitted, it is still true that the plaintiff rested his case without offering proof of the fraud, and the motion of defendant to exclude all of his evidence for want of such proof, should have been sustained. We respectfully refer the court to the authorities cited, see report of *English case,* 100 Miss. 576, in the brief of McWillie & Thompson and A. S. Bozeman, attorneys for the appellee in the case, and we especially commend to the court the opinion of this court delivered by its chief justice in that case and the authorities cited therein.

There is not a particle of testimony in the case which even tends to show that Robertson who represented the railway company in obtaining the written release acted fraudulently, unless it can be said the fact that the complainant was not given employment by the railway company after the execution of the release itself proved that the release was obtained by fraud. It might as well be said that because the maker of a promissory note failed to pay his note when due, his failure proves that he did not intend to pay the note at the time he executed it, and that, therefore, the debt evidenced by the note was contracted fraudulently. There isn't a court in any civilized country that would hold a failure to pay a note when due was even *prima-facie* evidence that the debt which the note evidenced was contracted by fraud. We do not think that any court ought to hold, in the absence of evidence showing the facts, that the failure by a railway company to give the complainant employment after the execution of the release and acquittance was even *prima-facie* evidence, assuming the oral contract was made, that at the time it promised the plaintiff to give him employment, it did not intend to keep its promise. Fraud is never presumed; but must be proved.

*Post hoc ergo propter hoc* is not legitimate argument; and yet upon such argument alone the complainant's case in answer to the proposition we have just made to the effect that if the contract to give the complainant employment

made, if made as the complainant testified it was made, it must be treated as made in good faith, and as not made with the intent to deceive, until the contrary is proved.

### Concluding Observations.

1. The court is earnestly asked to consider the rules applicable to suits for the annulment of written instruments and the effect of unreasonable delay in the institution of such suits, as are clearly deducible from the authorities on the subject.

We have not elaborated this feature of the case in this brief, as we probably should have done, first because the law of the subject is well established; second, our dread of making this brief too long; and third, our great confidence in the correctness of the propositions we have fully discussed.

2. While we have made no special reference to the vagueness of the alleged oral contract to give the complainant employment, yet we know the court will seek to reach a just conclusion in the case, and a mind so disposed will give consideration of the facts that no amount of wages or salary was mentioned in the pretended agreement and no designated definite employment was named.

We ask a reversal of the decree appealed from and a final decree of this court denying the complainant all relief.

*J. E. Parker* and *H. T. Odum*, for appellee.

It is the contention of appellee herein that the release in question was obtained by offering to appellee one hundred and twenty-five dollars and employment at his former position for life. That the consideration of employment for life was not made in good faith, but for the purpose of deceiving appellee, and that appellee relied thereon in signing such release and was deceived thereby.

That the appellant failed to carry out this feature of the settlement, and did not intend to carry out the same when made, which rendered such settlement voidable, and this

appellee was not bound thereby. We do not contend that this release could be avoided if the terms of settlement made at the time were made in good faith. 23 R. C. L., p. 383. In this is found the difference in this case and the case of *Railway Co.* v. *Turnbull*, 71 Miss. 1029. In the Turnbull case the representations alleged to have been false were statements with regard to Turnbull's health or the extent of his injury, and which statements did not purport to be anything other than expression of opinion, about which the court said: "The opinion of the physician in this instance was an honest one, a reasonable one, a just one as the case then stood." If the statement of Roberson in this case had been honest, reasonable and just we would have no right to avoid the release made on such honest, reasonable, and just representations.

A better announcement of the rule is found in *Gross* v. *McKee*, 53 Miss. 536, wherein it was held that a deed of trust obtained by fraud was not binding. The case of *A. T. & S. F. Ry. Co.* v. *Skeen*, 174 S. W. 655, is very similar in facts to this case. *Atchison, Topeka and Santa Fe Ry. Co. to T. D. Skeen, Dr. Smith* v. *St. L. & S. F. Railway Company*, 148 Pac. 759; *Rapid Transit Company* v. *Smith*, 86 S. W. 322.

The appellant complains about the measure of proof required in this case. The appellee only asked one instruction on this question, which is found in record, page 180, and which does not describe the measure of the proof required. By this instruction the appellee left the measure of proof entirely to the appellant and the rule as to the measure of proof desired by the appellant were embodied in three instructions as follows:

"The court instructs the jury for the defendant that the release signed by Kropp is presumed to be valid and binding; and before you will be entitled to disregard this release, it must be proved to your satisfaction by clear and convincing testimony that it was fraudulently obtained from Kropp by the false and fraudulent promise that he would be given employment for life. Also, if he would

sign the release; and unless this has been proven to your satisfaction by clear and convincing proof then it is your duty to return a verdict for the defendant. Given. Filed Dec. 3, 1921. George F. Hand, Clerk." This instruction shown at page 188 of the record.

"The court instructs the jury for the defendant that before the plaintiff can recover anything in this case of the defendant and before the jury is authorized to find whether or not the defendant is liable for the plaintiff's injury, it is necessary that the plaintiff shall first establish to your satisfaction by the testimony that the release in question was procured by fraud or misrepresentation." "The burden is on the plaintiff to establish to your satisfaction by testimony that is clear and convincing that the release was procured by a fraud or misrepresentation and unless the plaintiff has so proven to your satisfaction, then the release is to be taken and considered by you as valid and binding and it is your duty to return a verdict for the defendant. Given. Filed Dec. 3, 1921. Geo. F. Hand, Clerk." This instruction is found on page 189 of the record.

6. "The court instructs the jury for the defendant that the burden is on the plaintiff in this case to prove to your satisfaction that the release in question was obtained from him by fraud; that the defendant's claim agent, Robertson, represented and promised to Kropp as a part of the settlement with him that the railway company would give him a job for life in addition to one hundred and twenty-five dollars in money, and that this promise to give Kropp a lifetime job was false and fraudulent and was made for the fraudulent purpose of inducing Kropp to sign the release in question and Kropp relied upon such a promise as an inducement for signing the release and unless you believe from the preponderance of the testimony that Kropp was fraudulently induced by Robertson, the claim agent to sign the release in question by a false and fraudulent promise that the railroad would give him employment for life, then the release is binding upon Kropp and it is your duty to re-

turn a verdict for the defendant regardless of whether or not you believe from the testimony that the defendant railway company was liable for Kropp's injury. Given. Filed Dec. 3, 1921. George F. Hand, Clerk." This instruction is found at page 190 of the record.

It is therefore manifest that the appellant is not in position to complain that the measure of proof used in this case is incorrect, for appellant furnished the rule and asked its application. These instructions would seem to be all right, but we are not called upon to defend.

But it is insisted that even though appellee was promised employment as a term of the settlement and that such promise was fraudulent, that the appellee has no right now on account of laches. We insist that there is no proper place to apply the doctrine of laches in this case. The only excuse offered for laches is clearly covering a period of less than the statute of limitations. The law recognizes no length of time as being sufficient alone to bar one's action except the statute of limitations. The cases where laches applies are when something more than the delay is shown. The rule in Mississippi is announced in *Comans et al.* v. *Tapley, et al.,* 101 Miss. 203, as follows:

"Laches in legal significance is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly within the limits allowed by law."

Ratification. But it is further claimed that even though this settlement was fraudulent, that the appellee is now without any rights on account of ratification. Of course, ratification means "approval" "sanction," or "adoption." Ratification presupposes an invalid act, which is to be rendered valid by adoption. A willingness to accept the present or false situation in the place of what was the real agreement; a waiver of rights once had. But one must be informed before he can ratify. As cited by appellant, "If a party defrauded continues to receive benefits under the contract after he becomes aware of the fraud," etc. And, "the party

who has been misled, is required as soon as he learns the truth," etc. In all of the cases, it is recognized that it is necessary for the defrauded party to be informed of the fraud in such a way as to call for an election on his part A necessity for a choice to be made one way or the other. This choice to be made with full knowledge of both situations, so his election will embody the taking of one and the leaving of the other. In this case, it is not contended that the appellee ever did any positive act of election or ratification.

The appellee has submitted his cause to the court and in this contest his rights have been established. He is shown to have preferred to settle without going to court, but his experience in this effort met with poor success. He offered to return what he had received in order to let both parties present their rights for adjudication. This had been done as best we could according to the rules of law. We trust that the record is such that this court will not find it necessary to annul the trial already had, but that this case will be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellee, Lee Kropp, was injured on the night of the 29th of January, 1915, having his leg crushed, which necessitated the amputation thereof. At the time of the injury Kropp was a warehouse clerk in the service of the appellant, but was not on duty at the time the injury was inflicted, which occurred at about eight o'clock in the evening. Kropp had gone home from his work, and, his wife being ill, had started to the warehouse to get a bottle of medicine which he had left there. Freight train No. 43 was coming from Meridian, and the appellee had crossed the main line and was walking between the main line or commerce track and the house track when said train passed. As the train came in he spoke to the engineer and continued walking up the walkway, but he either stumbled and fell or was struck by something and fell, and his leg fell

on the track and was crushed. After the injury negotiations were pending between Kropp and the claim agent of the railway company for a long period of time, that is, from shortly after the injury until the 28th day of October, 1915, when the company paid Kropp one hundred and twenty-five dollars and took from him the following release:

"In consideration of the sum of one hundred and twenty-five dollars, to me in hand paid by the Alabama & Vicksburg Railway Company, the receipt whereof is hereby acknowledged, I hereby release and acquit said company of all claims by reason of injuries sustained by me at Newton, Miss., on the 29th day of January, A. D. 1915, by having my leg cut off by No. 43, the same being settled in full of any and all claims I have against the said company arising out of, or in any way connected with, said injury or accident.

[Signed]   LEE KROPP.

"Witness:

"H. T. BROOKS.

"R. J. JACKSON.

"Correct:        W. M. ROBERTSON, Claim Agent.

"H. H. LE ROY, Auditor.

"Chargeable to Transportation. Subaccount, Inj. to Per. Freight.   Amount, $125."

The following was on the back of the release:

"A. & V.

"Voucher No. 89046.

"$125.00

"Lee Kropp, Newton, Mississippi.

"Approved, Paid by S. Gray, agent, Meridian, A. & V. Ry. Co.

"Paid October 30, 1915, accounting department.

"Reunited to credit of S. Gray, agent A. & V. Ry. and N. O. & N. E. R. R."

It is contended by Kropp that, in addition to the consideration recited in this contract of release, he was promised a position for life in the service of the company, but

that the claim agent would not consent to place this agree-
ment in the contract of release, and that the claim agent
represented to him that it was in violation of the law to
place such a contract in the release or to make such a con-
tract.   It is also contended that the claim agent represented
to the said Kropp that the company was not liable to him
for the injury so inflicted upon him.   Kropp further testi-
fied that after he recovered from the loss of his leg and be-
came able to go to work he applied to the station agent at
Newton, Miss., for his position, but that the agent told him
that they had a man on the job who was older in the serv-
ice and he could not be displaced, and Kropp waited until
the employee so holding the job died, which occurred some
time after the said conversation, when he again applied for
the position, but that the agent did not give him the posi-
tion.   He testified that he did not take up the matter with
the claim agent nor with any of the other officers of the
company.   This suit was brought on January 28, 1921, just
one day before the six-year statute of limitations would
have run against the claim had there been no compromise
or settlement thereof.   He did not prior thereto return or
offer to return the consideration paid him on October 28,
1915.   The suit was filed in the chancery court for the pur-
pose of having the release canceled, and prayed also for
a judgment for the amount of his injuries.   There was also
a motion by the complainant for a jury trial, which was
allowed by the chancellor over the objection of the defend-
ant, who insists that the question of cancellation was one
for the conscience of the chancellor, and should not be sub-
mitted to a jury.   The defendant also requested that specific
questions be propounded to the jury to be answered by
them, said questions presenting findings of fact on the
various questions involved in the suit, which was refused
by the chancellor.   The cause proceeded to trial, and there
was a verdict for the complainant, the appellee, for twelve
thousand dollars, on which judgment was entered, from
which this appeal is prosecuted.

There are numerous assignments of error, but we deem it only necessary to discuss the questions as to the effect of the settlement and whether the written instrument evidencing the settlement can be contradicted or supplemented by an oral understanding of other considerations not mentioned therein, and also whether there was fraud practiced upon the complainant in procuring the settlement, and whether the evidence produced is sufficient in law to authorize the court to set aside the settlement and release on that ground, and also whether there was a ratification on the part of the complainant by reason of the long delay involved in the case on account of the lapse of time and opportunity to make inquiry into the facts.

The case for the appellee depends entirely upon his own evidence both as to the release and settlement and as to the facts relied on by him to constitute liability. He is contradicted on all points in the case by more than one witness. From January 29, 1915, to the date of the release and settlement the complainant had full opportunity to learn both the facts and the law with reference to the liability of the company and his rights. To say the least of it, his right of recovery against the railway company was doubtful, and it was not improbable on the facts in the record that a jury might have decided the case against his contentions. He had full opportunity to learn all the facts and to learn the law with reference thereto. He insisted for many months upon a settlement which would embody in it an agreement to give him employment for life in the service of the company. It appears from his own testimony that he had had this matter up with some of the superiors of the claim agent, and that they objected to making a settlement involving the contract to employ him for life. On the day before he signed the contract of release he had earnestly pressed the claim agent to embody such a stipulation in the contract, and the claim agent had distinctly and clearly refused so to do. It is clear from his own testimony that he knew both the importance of having this stipulation in his contract and knew that it was not

in the contract and would not be placed therein. He knew exactly what the contract was at the time he signed it. The only question relied on to impeach this contract for fraud is misrepresentations as to law, and ordinarily misrepresentations as to law are not sufficient to authorize a rescinding of a contract or a mistake in reference thereto. There must be something in such case to show that one party has superior knowledge over the other in reference to that subject, and that that fact caused the other party to rely upon such statement. It is true that this court has said in *Jackson* v. *Railroad,* 76 Miss. 607, 24 So. 874, that it did not violate the law or public policy of the state for the railroad company to make such a contract with the understanding and limitations laid down in that case. It is clear, however, from the evidence that the complainant had ample opportunity both before the execution of the release and subsequent thereto after being refused employment to learn his rights in reference thereto.

It was said in *English* v. *N. O. & N. E. Railroad Co.,* 100 Miss. 575, 56 So. 665, that a release of the character here involved is contractual in its nature and cannot be varied by parol evidence. As to that release it was contended that there was also a promise to give employment in the service of the railroad on a verbal understanding, but the court held that the release was not subject to variations by parol evidence; that a stipulation in a writing which is contractual cannot be varied by parol evidence—citing *Thompson* v. *Bryant,* 75 Miss. 12, 21 So. 655; *Baum* v. *Lynn,* 72 Miss. 932, 18 So. 428, 30 L. R. A. 441; *Cocke* v. *Blackburn,* 58 Miss. 537.

As above stated, the only difference in the present case is the statements by the complainant that the claim agent represented it was in violation of law to place such a contract therein, and also that the claim agent claimed the railroad was not liable. The parties in the present case dealt with each other at arm's length. There was nothing in the situation of the parties giving one a right to rely upon the superior knowledge and skill of the other, and

there was no fiduciary relation existing between the parties, and in our opinion the fact relied on to constitute fraud, even if proven, would be insufficient to set aside the agreement. We think, however, that the evidence touching fraud failed to meet the test required by law if it was sufficient to avoid the contract. In *Alabama & V. Ry. Co.* v. *Turnbull*, 71 Miss. 1029, 16 So. 346, the rule is stated in the first headnote as follows:

"One injured by a railroad company who, on a compromise settlement, releases his claim for damages, and afterwards, in an action at law, seeks to avoid the release, must show by clear and convincing evidence that it was procured by fraud or misrepresentation such as would authorize its cancellation by a court of equity."

In the case before us the complainant's statement in reference to the representations is contradicted by the positive testimony of two witnesses and also by the circumstances surrounding the transaction preceding the settlement at the time thereof and subsequent thereto. He is contradicted not only by other witnesses, but by the circumstances of the case. The statement of the rule in the Turnbull case imposes upon the complainant a higher standard of proof than he has furnished in the case, and it is not sufficient to say that the jury below found in accordance with its contention. It is not a case of a mere conflict between individuals, but it is a failure to bring before the court that clear, convincing, and satisfactory evidence that warrants a court of equity in setting aside a contract. Again, we think that, if these views were not sound, it would have been the duty of the complainant to have learned the facts or make reasonable efforts to do so and to have sought rescission of the contract because of the fraud within a reasonable time after he was refused employment. It seems to us that a reasonable man would have taken up the question with the claim agent or with the superior officers of the company when he was refused employment. If his version of the settlement be true, it would have been natural for him to have sought to place

himself upon the pay roll as quickly as possible and to have found out the reason why, and, if the contract was not lived up to, to have elected to rescind and sue for his damages or bring an action for breach of the contract within a short time thereafter. Having waited more than five years after he was entitled to be re-employed, and during all of that time retaining the funds received by the settlement, this warrants the court in holding that he had ratified the contract as written, and that it is too late now to seek rescission. 4 R. C. L. 514, section 26.

*Reversed and dismissed.*