Fornea *v.* Goodyear Yellow Pine Co. *et al.*

(Division B.    Feb. 21, 1938.)

[178 So. 914.    No. 33004.]

Hathorn & Williams, of Poplarville, and Grayson B. Keaton, of Picayune, for appellant.

**H. H. Parker,** of Poplarville, and **Heidelberg & Roberts,** of Hattiesburg, for appellees.

56

**Ethridge, P. J.,** delivered the opinion of the court.

On April 29, 1936, the appellant filed suit against the appellees in the circuit court of Pearl River county for the sum of $30,000, for personal injuries alleged to have been received in November, 1934. It is alleged in the declaration that Fornea was employed to work on the green chain at the sawmill, of the Goodyear Yellow Pine Company, located at Picayune, Miss.; that when it rained, part of the place where he was required to work would get wet; that as part of his work he was required to handle heavy timber; that on the 21st day of November, 1934, while the floor of the platform where he worked was wet, while moving a piece of timber, he slipped and fell, injuring himself. It was alleged in the declaration that it was the duty of the company to furnish him a safe place in which to work, and that the place where he was required to work was not safe, by reason of rain blowing in on the floor, rendering it slick and unsafe. It is also alleged that the timber which he was handling was very heavy, and that insufficient help was furnished for such work.

The defendant filed a plea of the general issue, and

three special pleas. The pleadings for the defendants being identical, although separately filed, only those for the main defendant, the Goodyear Yellow Pine Company, will be stated.

Special plea No. 1 alleged that on January 9, 1935, a release was signed by the plaintiff in consideration of $10, this release being for the injury complained of in the declaration, which release, made an exhibit to special plea No. 1, reads as follows:

"For the sole consideration of Ten and No/100 Dollars ($10.00) to me this day paid, I, for myself, my heirs, executors, administrators and 'assigns, do hereby release and forever discharge Goodyear Yellow Pine Company of and from all claims or demands, damages, actions, or causes of action in law or in equity from any matter, cause or thing whatsoever prior to the date hereof, and on account of personal injuries, and all other loss or damage (including loss of or damage to the property of the undersigned) resulting or to result from an accident to me which occurred on, or about, the 26th day of November, 1934.

"To secure the payment of said sum I hereby represent to Goodyear Yellow Pine Company that I am twenty-one years of age and that I rely wholly upon my own judgment, belief and knowledge of the nature, extent and duration of said injuries, disabilities and damage, and that no representations or statements about them have induced me to make this settlement.

"It is understood and agreed that the consideration stated herein is contractual, and not a mere recital; and that all agreements and understandings between the parties are embodied and expressed herein. In Witness Whereof, I have hereunto set my hand this 9th day of Jan., 1935. (Sgd.) T. C. Fornea."

"I, C. P. Ulmer, hereby certify that I have this day interpreted and explained this document to T. C. Fornea and he understands that the signing of this release

will effectually bar him from making any further claim by reason of the accident which happened on or about the 26th day of Nov., 1934.

"C. P. Ulmer."

"State of Mississippi, County of Pearl River.

"Be it known that on this 9th day of January, 1935, before me personally appeared T. C. Fornea, to me personally known to be the signer and sealer of the foregoing instrument, and freely acknowledged that he voluntarily executed the same in consideration of the above sum to him paid for the uses and purposes therein set forth.

"W. H. Farrell, Notary Public. (Seal)"

Special plea No. 2 set up a release dated May 22, 1935, for an injury sustained May 2, 1935, given in consideration of the payment of $35. Since the court gave a peremptory instruction for the plaintiff that this release did not bar his action, it will not be set forth.

Special plea No. 3 for the defendant alleged that the plaintiff ought not to have or recover anything by his said action for the reason that he is estopped from now asserting that he has an unsettled claim of any kind, or for any personal injury suffered by him while in the employ of the company during the year 1934. That on or about the 24th of July, 1935, plaintiff had entered into a certain written contract set forth in the plea, which recites: "In consideration of the bonus to be paid, as is hereinafter set out, by the employer, to the employee, the employee hereby agrees that he will, at the end of each month hereafter during the year 1935, execute truthfully a written statement showing whether he has or has not sustained any personal injury while employed by and working for the employer, and will further truthfully execute at the end of each succeeding month of the year 1935 a written statement showing whether or not he has any claim or demand against the employer for any damage or demand on account of any personal

injury received by said employee at any time. The employer in consideration of the aforesaid agreement of the employee hereby agrees with said employee that if employee continues in the employ of the employer to the end of the year 1935 and the employee has sustained no personal injury of any nature or kind while working for the employer and has, at the end of each respective month during the remainder of the year 1935 executed the written statements at the end of each month, truthfully showing that he has sustained no personal injury during each of said months, and that the said employee has no claim or demands against the employer for or on account of any personal injury, theretofore sustained, by the said employee, that the employer will pay unto the employee a bonus equal to one week's average wage or average salary received by said employee while working for the employer during the said year 1935. Witness our signatures on this the 24th day of July, 1935."

This contract was witnessed by two persons; and it was alleged that thereafter, from time to time, the plaintiff signed and delivered to the defendant the Goodyear Yellow Pine Company written certificates each month during the balance of the year 1935, certifying not only that he had received no injury of any nature while working for this defendant during the month referred to, but that he had no claim of any nature, on account of, or resulting from, any injury sustained by him while in the employ of this defendant; that thereafter, on the 24th day of January, 1936, in accordance with the terms of the written contract of date July 24, 1935, above quoted, this defendant delivered to the plaintiff its certain bonus check for $8.44, executed by this defendant, which said check was tendered and accepted on the following conditions and for the following purposes, to wit: "This check accepted by me as a bonus for no personal injury to me from June 1, 1935, to December 31, 1935, and for my being able to sign up that I have no

unsettled claim against the payer for personal injuries sustained by me at any time while working for payer prior to January 1, 1936."

It was alleged that this check was accepted by the plaintiff, who indorsed it and obtained the cash thereon; and by reason of the aforesaid contract, certificate and bonus check, and conduct on the part of the plaintiff, the latter "is now estopped from asserting any claim of any nature whatsoever against the defendant by reason of any alleged accident during the year 1934."

The plaintiff, by replication to plea No. 1 above set out, denied the material allegations of the plea, charging that the $10 payment was made, and release executed and obtained by the defendants with a view to compensating the plaintiff for any injuries sustained, and to release and forever discharge the defendants from any and all claims arising prior to the date of the release.

The plaintiff replied to special plea No. 3, in effect, denying that the contract therein set forth was understood to be applicable to the injury for which he sued; that it was only applicable to injuries which might be received after the execution of such contract; also asserting that plaintiff was coerced into signing said contract by a threat of losing his job or employment if he did not do so; and that false representations were made in respect thereto.

The defendants filed rejoinders to the replications, in which it was specifically charged that the plaintiff executed the contract and certificate and indorsed the check without question; and that the plaintiff was therefore estopped to set up a claim or contention that he did not understand the force and effect of the writing executed by him, and set forth in said special plea No. 3.

When the case was called for trial the defendants filed a motion for a continuance on account of the absence of a physician who treated the plaintiff at the time of the alleged injury, November 21, 1934; alleging in the

motion that plaintiff, when he entered the employ of the defendant, executed a waiver of benefit of the statute making privileged communications between physician and patient.

It was alleged in the motion that Dr. V. B. Martin was absent, without fault on the part of the defendants, and unable to appear in court; that they had previously arranged for him to appear as a witness; that Dr. Martin owned and operated a hospital in the city of Picayune, Miss., known as the Martin Sanitarium; that in connection with the operation of this hospital the witness had arranged with the employees of the Goodyear Yellow Pine Company for medical treatment; that plaintiff, immediately after the injury complained of in the declaration, presented himself to the witness at the Martin Sanitarium; and the witness, Dr. Martin, treated the plaintiff for the injury claimed to have been sustained in connection with the alleged accident, at which time the physician made a thorough examination of the plaintiff to determine the extent of the injury if any. It was found that the plaintiff had sustained no injury to his hip or back—they were not bruised, sprained, or injured in any way, the only injury found being a slight brush burn or bruise on his face. And further, that the plaintiff was not caused, as the result of any injury sustaind in the alleged accident here complained of, to suffer pain to any great extent then or afterwards, nor was he permanently injured. It is stated that Dr. Martin treated the plaintiff from November 21 to 26, 1934, at which time plaintiff had entirely recovered from all injuries sustained in the alleged accident, and was discharged by the physician. The defendant also sets out what was expected to be proved by Dr. Martin in regard to the injury of May 2, 1935; but as this phase of the suit was eliminated by a peremptory instruction, as above stated, holding that the settlement in this matter did not bar plaintiff from recovering, we do not further notice it.

The plaintiff's proof was to the effect that he was severely injured in his back and hips on November 21, 1934, and that he did not know the nature and extent of these injuries at the time of signing the release of January 9, 1935, made exhibit to special plea No. 1 for the defendant. He also offered proof to show that it was understood between the agent of defendant and the agent of Mastin & Company, who effected the release, the latter being under contract with the Goodyear Yellow Pine Company to settle claims against that company for injuries sustained by its employees, that the settlement was for a bruise then existing, and that the extent of his injuries was not known to either party.

The agent of Mastin & Company, who was also representing the Goodyear Yellow Pine Company, testified to the effect that the contract of release was read and explained to the plaintiff, who understood at the time he signed the release what it contained and the effect thereof.

The plaintiff's testimony tended to sustain his contention as to the signing of the bonus contract of July 24, 1935, that he was compelled to sign it or give up his employment; and also it was understood at the time of its execution that it only applied to injuries received after that date while in the employment of the company. He testified furthermore—in which he is sustained to some extent by other witnesses—that the contract was not read to him, and that he never read it, and also that he never read the releases or contract in reference to the bonus payment; and that he did not intend to release the company from liability for his injury sued for, by signing such releases.

The testimony for the company tended to show that plaintiff understood the contracts in each instance; and that, in fact, he suffered no permanent injury, and continued in the employment of the company until discharged shortly before the bringing of this suit.

When the motion for a continuance was made, setting forth Dr. Martin's testimony, plaintiff agreed that if Dr. Martin were present he would testify to the facts, or alleged facts, set up in the motion for a continuance, but that he did not waive the competency of such testimony, or his right to object, or to invoke the privileged communications statute. Code 1930, section 1536.

The defendant introduced a contract, signed by the plaintiff when he entered the employment of the company in 1933, waiving the advantages and privileges of the communication statute between physician and patient.

The case was submitted to the jury on this conflicting evidence, and the contracts and releases above mentioned, and the jury returned a verdict for the defendants.

The law is that parties have a right to make contracts not prohibited by law, in matters affecting their business and civil rights, and that a party who signs a contract is usually controlled by the terms of the written contract, and the same cannot be varied or contradicted by parol evidence; and that a party who has signed a contract in writing would not ordinarily be permitted to excuse himself from the effect of the contract because of his failure to read it or to become acquainted with its contents. Alabama & V. R. Co. v. Kropp, 129 Miss. 616, 92 So. 691; Continental Jewelry Co. v. Joseph, 140 Miss. 582, 105 So. 639; Gunter et al. v. Henderson Molpus Co., 149 Miss. 603, 115 So. 720. Many other cases to the same effect could be cited from the reports of the Supreme Court of this state. But if the writing is procured by false representations, or fraud, committed by one of the parties to the writing on the other, on which he might reasonably rely, the court will permit the facts to be shown, and if fraud was committed in the procurement of the contract, it will be avoided; in other words, no contract exists in legal contempla-

tion which is procured by fraud. See Randolph Lumber Co. v. Shaw, 174 Miss. 297, 164 So. 587; Huff et al. v. Bear Creek Mill Co., 116 Miss. 509, 77 So. 306; Dana v. Gulf & S. I. R. Co., 106 Miss. 497, 64 So. 214; Kansas City, M. & B. Ry. Co. v. Chiles, 86 Miss. 361, 38 So. 498.

The case, as stated above, was submitted to the jury on conflicting evidence, and the law given, applicable to the hypothesis shown by the evidence, according to the contentions of each of the parties. The main complaint is in regard to the instructions given and refused in the trial of the case. It will not be necessary to set forth the voluminous instructions given, as that would consume a good deal of space without being of substantial value. We think the instructions, taken as a whole and considered together, in the light of the evidence in the record, constituted a proper and sufficient guide to the jury. If the plaintiff signed the contracts involved in the above statements, knowing their conditions, and was not misled or deceived by fraudulent representations, he is bound by the written terms of the contract. While the law recognizes that there is no method known to the law by which to make people prudent, and that experience shows that people often imprudently make contracts, including the signing of releases, yet every person must be presumed to know the law, and in the absence of some misrepresentation or illegal concealment of facts, the person must abide the consequences of his contracts and actions.

In the light of the fact that people are not prudent, and may at times be unjustifiably imposed upon, this court has been liberal in reviewing transactions where one party might have the advantage over another party in experience, knowledge, and wisdom; but in the absence of fraud, deceit, or fiduciary relations of some kind, the court cannot relieve a person from the consequences of his acts merely because he has not acted prudently or diligently about his contracts or other

matters. The benefits of the privileged communication statute, Code 1930 (section 1536), may be waived by contract before trial. Sovereign Camp, W. O. W., v. Farmer, 116 Miss. 626, 77 So. 655.

We find no reversible error in the record, and the judgment of the court below is affirmed.

Affirmed.