WOODRUFF, et al. *v.* BATES, et al.

Division A.   Feb. 19, 1951.

No. 37806  (50 So. (2d) 559)

Geo. R. Nobles, for appellant.

Lotterhos & Dunn, and **B. O. Mounger,** for appellees.

Kyle, J.

This is an appeal by J. L. Woodruff, Wanete Oil Company, and Nathan Kalvin, defendants in the court below, from a decree of the chancery court of Walthall County rendered in favor of Mrs. Jessie Kate Bates and others, complainants, for the cancellation of three mineral deeds conveying interests in and to all oil, gas and other minerals in 1350 acres of land situated in Walthall County, which was owned by H. F. Bridges, Sr., during his lifetime.

The mineral deeds cancelled by the above mentioned decree are (1) a mineral deed conveying an undivided one-half interest in and to all oil, gas and other minerals in said lands, executed by H. F. Bridges, Sr., and his wife, Mrs. Lucinda Bridges, to J. L. Woodruff, and dated March 19, 1937; (2) a mineral deed conveying an undivided one-half interest in and to all oil, gas and other minerals in said lands executed by J. L. Woodruff to the Wanete Oil Company, and dated March 25, 1937; and (3) a mineral deed conveying an undivided one-fourth of one-half interest in and to all oil, gas and other minerals in said lands executed by the Wanete Oil Company to Nathan Kalvin, and dated July 14, 1937. The basis of the suit for the cancellation of the above mentioned mineral deeds was the alleged fraud perpetrated by J. L. Woodruff upon H. F. Bridges, Sr., and his wife, in the procurement of the mineral deed executed by them on March 19, 1937.

The original bill of complaint was filed by H. F. Bridges, Sr., and his wife, Mrs. Lucinda Bridges, on April 14, 1939. Nonresident summons was duly issued and publication thereof was duly made for all of the defendants in the manner required by law. The defend-

ants did not appear in response to the summons, and at the May 1939 term of the court a decree pro confesso and a final decree were entered granting the relief prayed for in the bill of complaint. On October 24, 1940, the appellants filed a petition and bond under the provisions of Sections 470 and 471, Code of 1930, asking that the decree pro confesso and the final decree be set aside and that the cause be remanded to the docket for hearing on the merits; and on November 28, 1940, the decree pro confesso and the final decree were set aside and the cause remanded to the docket for hearing on the merits. Thereafter the defendants filed their separate answers to the original bill. Woodruff, in his answer, denied the allegations of fraud and misrepresentation contained in the bill; the Wanete Oil Company, in its answer, and Nathan Kalvin, in his answer, alleged that they were bona fide purchasers for value without notice of the alleged fraud on the part of Woodruff in the procurement of the original deed by Woodruff from the complainants.

. H. F. Bridges, Sr., died in 1941, and Mrs. Bridges died in 1945. Prior to the death of H. F. Bridges, Sr., H. F. Bridges, Sr., and his wife, had executed deeds of conveyance of the above mentioned lands in separate parcels to their several children. A deed of conveyance of 120 acres of land was executed by them to Linus M. Bridges in 1935, but the deed was not recorded until 1938. The deeds of conveyance to Mrs. Jessie Kate Bates and the other children were executed by H. F. Bridges, Sr., and his wife, on April 12, 1940. A tract of 80 acres had been conveyed to William F. Herrin on December 27, 1938.

Sometime after the death of Mrs. Lucinda Bridges the suit filed by H. F. Bridges, Sr., and his wife, was revived in the names of Mrs. Jessie Kate Bates and others as heirs and successors of H. F. Bridges, Sr., and Mrs. Lucinda Bridges; Linus M. Bridges and William F. Herrin were permitted to file intervening petitions set-

ting up their claims to parts of the minerals involved; and later an amended and supplemental bill of complaint was filed by all of the complainants, including the above named intervenors, in which it was alleged that J. L. Woodruff, at the time he procured the original mineral deed on March 19, 1937, was acting as agent for and on behalf of Wanete Oil Company and Nathan Kalvin in the purchase of mineral rights, and that the Wanete Oil Company and Nathan Kalvin were chargeable with the fraud of Woodruff in the procurement of the above mentioned mineral deed.

The defendants answered the amended bill of complaint; and in their answers, J. L. Woodruff and the Wanete Oil Company admitted that the said Woodruff, at the time he procured the mineral deed from H. F. Bridges, Sr., and his wife, was acting as agent for the Wanete Oil Company. Nathan Kalvin, in his separate answer, denied that Woodruff was acting as his agent in the purchase of said mineral interest, and denied that he had any notice of the alleged fraud perpetrated by the said Woodruff in the purchase of said mineral interest, or any notice of any defect in the title of the Wanete Oil Company in the mineral interest conveyed to him on July 14, 1937, and alleged that he was an innocent purchaser for value without notice of any fraud or defects in the title to the said minerals.

The cause was heard before the chancellor in vacation in June 1949 upon the amended bill of complaint, the separate answers to the amended bill of complaint and to the intervening petitions filed by J. L. Woodruff, the Wanete Oil Company and Nathan Kalvin, the depositions taken prior to the time of the hearing and oral testimony taken in open court.

The main testimony offered on behalf of the complainants was the deposition testimony of H. F. Bridges, Sr., taken in December 1940, about four months before his death. Bridges testified that J. L. Woodruff called to see

him at his home on March 19, 1937 to see him about signing a mineral lease to the 1350 acres of land; that after some discussion of the matter, he agreed to sign a mineral lease; that Woodruff prepared the instrument immediately, using Bridges' tax receipts to get a proper description of the land; and that after the instrument had been prepared Bridges and his wife executed the same, thinking that it was a mineral lease. Bridges testified further that he did not agree to sell to Woodruff any interest in the oil, gas and other minerals on the 1350 acres of land; that nothing was said to him about the execution of a mineral deed; that Woodruff told him that the instrument that he had prepared was a mineral lease; and that he and his wife signed the same, thinking that it was a mineral lease; that he did not know until two years later that the instrument that Woodruff had prepared and that he and his wife had executed was, in fact, a mineral deed conveying to Woodruff an undivided one-half interest in the oil, gas and other minerals on the 1350 acres of land.

According to the testimony of the complainants' other witnesses, Mr. Bridges was approximately 81 years of age at the time he executed the mineral deed, his eyesight was failing, and he was unable to read the daily newspaper, but had the same read to him by other members of the family when other members of the family were present.

J. L. Woodruff, testifying in his own behalf and for the other defendants, denied all of the charges of fraud and misrepresentation made against him in the original and amended bills of complaint. Woodruff stated that he was employed by the Wanete Oil Company, and was paid a monthly salary for his services; that at the time he acquired the mineral deed from H. F. Bridges, Sr., and his wife, in March 1937, he was engaged in purchasing mineral rights for the Wanete Oil Company in Lawrence and Walthall counties; that he was not taking oil leases, but was buying minerals; that he went to the

home of H. F. Bridges, Sr., on March 19, 1937, in company with Walter Simmons, a notary public, for the purpose of buying mineral rights in the 1350 acres of land which Bridges owned; that he advised Mr. Bridges of his purpose and offered to purchase an undivided one-half interest in the minerals in said land; and that after the usual negotiations, Mr. Bridges agreed to sell him a one-half interest in the minerals and asked his wife to get his tax receipts for the purpose of getting a correct description of the land; that he, Woodruff, prepared the deed from the descriptions found in the tax receipts, and that Bridges and his wife then executed the mineral deed; that he did not offer to take an oil lease and that Mr. and Mrs. Bridges so understood; that he perpetrated no fraud on them and made no fraudulent misrepresentations to them concerning the nature of the instrument which they were executing; and that he paid them the sum of $135.00 for the one-half interest in the mineral rights which he purchased.

Woodruff admitted on cross-examination that Bridges "wanted to lease the lands and said he would lease"; but Woodruff said "No, I am not buying a lease, I am buying a mineral deed."

The answers of the Wanete Oil Company to interrogatories propounded by the complainants showed that Woodruff was a salaried employee of the company during the month of March 1937, and that the Wanete Oil Company furnished the money which was used by Woodruff in paying to Bridges the purchase price of $135.00 for the mineral deed.

The appellants in their brief contend that the chancellor erred in holding that the mineral deed from Bridges and his wife to Woodruff was procured by fraud, and that the deed should be cancelled.

The issue of fraud in the procurement of the mineral deed from Bridges and his wife to Woodruff had to be determined in the main from the testimony of H.

F. Bridges, Sr., who executed the mineral deed and the testimony of Woodruff himself; and there was a direct conflict in the testimony of these two witnesses. The chancellor chose to accept the testimony of Bridges and to reject the testimony of Woodruff, and in his opinion stated that he believed that Bridges had testified truthfully about the matter. Bridges' testimony was corroborated by other evidence, both direct and circumstantial, which the chancellor had a right to consider in determining the issues presented to him for final decision. Bridges at the time the mineral deed was executed had reached the advanced age of 81 years. His wife, who signed the deed with him, was only two years younger than he. His eyesight was seriously impaired, and his hearing was very poor. The instrument which he signed had been prepared by Woodruff, and Bridges signed where he was told to sign. After the deed had been executed and filed for record two years elapsed before Bridges discovered that the instrument which he had signed was a mineral deed, and not a lease; and immediately after making that discovery he employed a lawyer and filed a bill to cancel the mineral deed on the ground that the deed had been procured by fraud. At that time no oil had been discovered in Mississippi.

We think that the evidence is sufficient to support the findings of the chancellor on the issue of fraud in the procurement of the mineral deed by Woodruff from Bridges and his wife.

■■ ■ Woodruff was admittedly the agent of the Wanete Oil Company in the procurement of the mineral deed from Bridges and his wife, and the mineral deed and royalty transfer executed by Woodruff to the Wanete Oil Company a few days later was executed by the agent for the purpose of vesting the title to the properties in the principal. The deed executed by Woodruff to the Wanete Oil Company was therefore permeated with the fraud that Woodruff had perpetrated upon Bridges and

his wife in the procurement of the mineral deed from them, and the Wanete Oil Company was chargeable with that fraud. Henry et al. v. W. T. Raleigh Co., 152 Miss. 320, 120 So. 188; Dana v. Gulf & S. I. R. R. Co., 106 Miss. 497, 64 So. 214; Fay & Egan Co. v. Cohn & Bros., 158 Miss. 733, 130 So. 290; Fornea v. Goodyear Yellow Pine Co. et al., 181 Miss. 50, 178 So. 914; 2 Am. Jur. p. 281.

Appellants' attorneys in their brief, however, insist that, even though the decree of the lower court be affirmed as to Woodruff and the Wanete Oil Company, the decree should be reversed as to Nathan Kalvin on the ground that Kalvin, in acquiring his interest in the minerals, was a bona fide purchaser for value without notice of any defect in the title of the Wanete Oil Company.

Kalvin, in answer to the written interrogatories propounded to him, stated that he had no personal knowledge of the facts relating to his acquisition of an interest in the minerals on the Bridges land, that he acquired that interest through his agent, S. M. Aronson, who acted for him in all such matters.

Aronson testified that during the year 1937 he was acting as Kalvin's agent in purchasing mineral interests for Kalvin's account; that Kalvin gave him no instructions with respect to the purchase of the Bridges Minerals, or any other minerals in Walthall County; that he negotiated with E. B. Germany of the Wanete Oil Company for the purchase of an interest in the mineral rights to be acquired by the Wanete Oil Company in Lawrence and Walthall counties, and that the interest which Kalvin acquired in the mineral rights on the Bridges' land was acquired by him by virtue of the agreement entered into by him with E. B. Germany of the Wanete Oil Company. The exact nature of that agreement must be determined from the following statement made by Aronson in answer to the cross-interrogatories propounded to him by the complainants. Aronson was asked, "State in de-

tail how you learned that Wanete Oil Company had said minerals in Walthall County and that you could purchase an interest therein, and state further in detail the negotiations by which you purchased and acquired said minerals from Wanete Oil Company.'' Aronson's answer was as follows: ''In a general conversation, Mr. E. B. Germany said he was purchasing minerals in Mississippi and was going to continue this buying in Walthall and Lawrence counties. He said I could participate in these latter purchases if I cared to. I agreed to participate.''

From the statement thus made by Aronson in answer to the above quoted interrogatory, it appears that Kalvin was to participate in the purchases of mineral interests made by the Wanete Oil Company in Walthall and Lawrence counties during the year 1937, and that Kalvin was to have a one-fourth interest in those purchases under the terms of the above mentioned agreement. The acquisition of these mineral interests in Walthall and Lawrence counties by the Wanete Oil Company and Kalvin under the terms of the above mentioned agreement partook of the nature of a joint adventure, and the chancellor was justified in holding that Woodruff was, in fact, acting as agent for both the Wanete Oil Company and Kalvin in the purchase of mineral interests in Walthall and Lawrence counties, and that the deed executed by the Wanete Oil Company to Kalvin on July 14, 1937, was executed in pursuance of the above mentioned agreement and for the purpose of giving effect to the terms of that agreement.

The deed from the Wanete Oil Company to Kalvin recited a consideration of $1.00. Aronson testified that he paid 45 cents per mineral acre for the one-fourth interest which he purchased for Kalvin's account. Aronson was unable to produce the cancelled check or other written receipt showing the alleged payment of the purchase price made by him to the Wanete Oil Company.

Kalvin's plea that he was an innocent purchaser for value without notice constituted an affirmative

defense, which it was incumbent upon him to sustain by competent proof. Mississippi Chancery Practice, Griffith, Second Edition, Section 360. The chancellor did not think that the evidence offered in support of that plea was sufficient to sustain the plea.

In view of the facts stated above, we think that the chancellor was justified in holding that Kalvin failed to established his claim that he was an innocent purchaser for value without notice, and that the chancellor was correct in rendering a decree against him also.

The decree of the lower court will therefore be affirmed. Affirmed.