DICKINSON, Presiding Justice,
dissenting:
¶ 61. The majority should not, in my view, affirm the Secretary of State’s find *175 ing of fraud because the Secretary of State made no finding that anyone detrimentally relied on any false representation. Indeed, the Secretary of State could not have made this finding because there has been no formal hearing on the matter. All we have are briefs. No witnesses. No evidence. No testimony regarding the level of sophistication of the investors. In fact, the record does not even disclose the names of the seventeen investors.
1162. The majority views this case as a securities regulatory action where the Secretary of State properly found Harrington and Wolfe made representations that possibly could have defrauded someone, but simply made an arithmetic error on the “penalty.” Any fair reading of the law requires more. And any fair reading of the facts in this case clearly demonstrates that the majority has strayed from the record and that the Secretary of State acted as surrogate plaintiff, plaintiffs counsel, trial judge, and trial jury in a fraud case.
¶ 68. The majority responds to the absence of any proof of fraud by saying that there does not have to be any fraud — just a subjective finding by the Secretary of State that there might have been some fraud. But the record does not support the majority’s implication that the Secretary of State did not find actual fraud. In its brief, the Secretary of State clearly states: “The record is clear that 17 investors were defrauded.” (Emphasis added.)
¶ 64. But even if the Secretary of State had argued the theory advanced by the majority, this case still should be reversed. The majority, claiming to strictly construe Section 75-71-501(3)’s language, fails to do so. The statute does not say that a violation occurs when one commits an act or practice that the Secretary of State subjectively believes might possibly operate as a fraud or deceit. Rather, it requires an “act, practice or course of business which operates or would operate (not might operate) as a fraud or deceit....” (Emphasis added.)
¶ 65. The Secretary of State represents to us that the record includes clear evidence that Harrington and Wolfe defrauded seventeen investors. There is no such proof in the record that has been made available to me. And I see none pointed to by the majority. There is no evidence whatsoever that anyone — let alone seventeen unnamed investors — detrimentally relied on anything represented by Harrington or Wolfe.
¶ 66. But even accepting the majority’s theory that the Secretary of State did not find fraud, but rather that investors “would” have been defrauded, what is the proof of that? None. Nor could there be, since all of the alleged fraudulent conduct occurred in the past. This is not a case of alleged ongoing fraudulent conduct. So it defies logic to presume that the Secretary of State could find that Harrington and Wolfe committed acts that “would operate as a fraud” when there is no proof that anyone might have relied, was going to rely, or did rely to his or her detriment on any false representation.
¶ 67. If the majority intends to say the Legislature has given the Secretary of State the power and authority to find a violation for every representation in a securities offering that the Secretary of State subjectively believes might (as opposed to did or, unless abated, is going to) operate as a fraud, then it is enough for me to say that I simply reject that tortured interpretation of the statute. In my view, some proof is required that someone actually did detrimentally rely, or actually would have detrimentally relied, on the representations. The Secretary of State clearly found that Harrington and Wolfe did commit fraud, so I will explain my vote to reverse based on that finding, rather *176 than on what the majority believes the Secretary of State might have found.
¶ 68. The word fraud is understood by nearly everyone who can spell it (including my esteemed colleagues in the majority), to mean an intentional, material, less than truthful, representation upon which the speaker intends the victim to rely, and upon which the victim does actually, detrimentally, rely.[10] This Court has applied that meaning since before Mississippi became a state, and the English were employing it in the Common Law when Henry VIII schemed a way to marry Anne Boleyn. Law students must know and apply that meaning on law school and bar exams.
¶ 69. So why would we think the Legislature inserted the word “fraud” in Section 75-71-501 and expected us to apply a different meaning without telling us? The simple answer is, it would not — and did not. I certainly do not believe the Legislature expected us to rummage around in federal caselaw for a definition. And the same is true for the burden of proof for a fraud claim which, in Mississippi (as opposed to a few federal courts), has always been by clear and convincing evidence.

The standard of proof for fraud is clear and convincing evidence.

¶ 70. It is well-established law in Mississippi that a litigant must prove fraud by clear and convincing evidence.[11] But with all due respect, I believe the majority has improperly relied on an incorrect interpretation of Administrative Rule 817,[12] and on decisions rendered by federal courts concerning federal (not Mississippi) law, to lower that burden to a preponderance of the evidence for violations of Mississippi’s securities-fraud claims.
¶ 71. Rule 817(b) states that “unless otherwise specified by law, the standard of proof at the hearing shall be by preponderance of the evidence standard.”[13] This, of course, raises the question of whether a different standard of proof has been “specified by law.” Clearly, one has. The standard of proof for fraud claims is “by clear and convincing evidence.” So say the “conclusions of law” in thousands of decisions rendered by chancellors, and even more jury instructions given by circuit judges and approved by this Court.[14] So say both the old and new Mississippi Model Jury Instructions.[15] If a legal rule as well-known, well-defined, and universally accepted as the burden of proof in a fraud case does not qualify as being “specified by law,” then Rule 817 is devoid of meaning.
¶ 72. When confronted by contradictory *177 authority in Holland v. Mayfield[16]— wherein this Court applied a clear and convincing burden of proof to a securities-fraud case — the majority simply overrules it, stating only that “the Holland Court erred in applying the clear and convincing standard without explaining the departure from the Rules.” In my view, the Holland Court had nothing to explain, since it did not depart from the Rules.

Fraud requires detrimental reliance.

¶ 73. The time-tested law of fraud that this Court has consistently followed requires proof of:
(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker’s knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer’s ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.[17]
¶ 74. In Geisenberger v. John Hancock Distributors, Inc., a federal court found that Section 75-71-501 requires proof of reasonable reliance “consistent with federal rule 10b-5.”[18] The majority correctly points out that, in Allyn v. Wortman, we declined to follow Geisenberger;[19] but the majority misapprehends the reason, which had nothing to do with the reasonable-reliance requirement for fraud. In Allyn, we determined that “there is no express provision for an individual cause of action or for private damages in the code regarding a violation of § 75-71-501,” and it was on that point of law that we refused to follow Geisenberger,[20]
¶ 75. Both scienter and reliance are, and should be, necessary elements of fraud. The record is devoid of any findings by the Secretary of State that Wolf and Harrington knowingly or intentionally misled investors. The record is also devoid of any proof that anyone relied on any false representation, or that any false representation induced anyone to do anything.
¶ 76. Also, I note that, had Wolf and Harrington placed the funds in an escrow account as the PPM stated, it would have made no difference in this case, because the PPM also states that investments would remain in escrow only until Steadi-Vest raised one million dollars or until September 20, 2008, whichever first occurred. SteadiVest generated more than one million dollars within the first few months of its offering. After that, under the terms of the PPM, the money properly could have been placed in the company’s operating account. So it seems to me unlikely that the failure to place the invests ment in escrow proximately caused anyone damage. But we will never know, because we have no testimony or proof of any kind from any investor.
CONCLUSION
¶ 77. Claims of fraud must be proven by clear and convincing evidence, and scienter and detrimental reliance are necessary elements of fraud. Because the Secretary of State applied the wrong standard of proof and failed to establish a *178 claim of fraud, I would reverse and remand for a proper hearing.
CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.

. Hobbs Auto., Inc. v. Dorsey, 914 So.2d 148, 153 (Miss.2005).

. See Cotton v. McConnell, 435 So.2d 683, 687 (Miss.1983) (citing Alabama and V.R. Co. v. Kropp, 129 Miss. 616, 92 So. 691, 693 (1922)); Mosby v. Gandy, 375 So.2d 1024, 1028 (Miss.1979); Clement v. R.L. Burns Corp., 373 So.2d 790, 795 (Miss.1979); Hamilton v. McGill, 352 So.2d 825, 831 (Miss.1977); Parker v. Howarth, 340 So.2d 434, 437 (Miss.1976); Aponaug Mfg. Co. v. Collins, 207 Miss. 460, 42 So.2d 431, 436-37 (1949).

. Miss. Sec. Act R. 817(B) (2008).

. Id. (emphasis added).

. The truth of these statements is so universally known that there is no need for citation of authority, but I will provide a few: Bank of Shaw, a Branch of Grenada Bank v. Posey, 573 So.2d 1355, 1361-63 (Miss.1990); Beck Enterprises, Inc. v. Hester, 512 So.2d 672, 677 (Miss.1987); Cotton v. McConnell, 435 So.2d 683, 686 (Miss.1983).

. Miss. Prac. Model Jury Instr. Civil § 21:5 (2d ed.2012); See also Miss. Proposed Plain Language Model Jury Instr. Civil, ch. 17, instr. 1700 (2012).

. Holland v. Mayfield, 826 So.2d 664 (Miss.1999).

. Hobbs Auto., Inc. v. Dorsey, 914 So.2d 148, 153 (Miss.2005) (citing Spragins v. Sunburst Bank, 605 So.2d 777, 780 (Miss.1992)).

. Geisenberger v. John Hancock Distrib., Inc., 774 F.Supp. 1045, 1051 (S.D.Miss.1991).

. Allyn v. Wortman, 725 So.2d 94, 102 (Miss.1998).

. Id.