KELLY et al. *v.* WILSON et al.

In Banc. Sept. 27, 1948.

(36 So. (2d) 817)

**N. W. Overstreet, Jr.,** and **Barnett, & Jones,** for appellants.

**O. B. Triplett, Jr.** for appellees.

**Montgomery, J.**

On September 11, 1891, Sam Futch was the owner of the SE¼ of SE¼ of Section 21, T. 8 North, Range 8 East, Scott County, Mississippi and on the said date he executed a deed, the body of which reads as follows: "In consideration of one dollar I hereby grant, bargain and deliver to Mack Johnson and Miles Haralson, Trustees of Five Points Free School, and their successors the following described one acre of land, so long as said land is used for school purposes to wit: Commencing at NE corner of SE¼ of SE¼, Section 21, Township 8, Range 8, and thence south 120 yards to N.E. C. of said acre; thence run west 70 yards, thence south 70 yards, then east 70 yards, then north 70 yards to commencing stob making one acre to have and hold unto them and their successors for school purposes, said land lying and being in Scott County."

The acknowledgment to this deed is defective, in that it omits the word "delivered," but the deed was nonetheless admitted to the record in the chancery clerk's office of Scott County.

The answer of appellants admits that the schoolhouse was built on the above described land. Joe Sharp testified that Sam Futch, after executing the deed, went on the one acre and pointed it out to him and others, showed them where to build the schoolhouse, and then worked on the construction of it. It was "a little log hut." Later another building was erected to replace the log hut, and it was placed upon approximately the same location that the former log hut occupied. In 1935 the present building was constructed. Ben Nick testified that Sam Futch helped to lay its foundation.

There is a public road, known as the Walnut Grove-Sebastapool public road, to the east of the schoolhouse. North of the schoolhouse there is a settlement road leading west from the Walnut Grove-Sebastapool public road to the old home of Sam Futch. There is a wire fence that runs north and south, located some forty or fifty yards west of the present building. On the south of the schoolhouse there is a zigzag line of white-washed trees that have been kept whitewashed by the school for more than fifteen years. B. A. Hamilton testified that Sam Futch told him about ten or twelve years before the trial in the lower court, that the settlement road north of the school building is the northern boundary of the school lot. The school children, for many years, have used the area south of the school, part of that west of the school, and all of that east of the school as a play ground. Some of the area north of the school has also been used. South of the schoolhouse a basketball court has been erected. The only outhouse is west of the school. About one-third of the present school building lies south of the southern boundary line of the one acre described in the deed from Futch.

On August 26, 1946, the trustees of the Five Point Free School filed this suit against the successors in title of Sam Futch, he having died in 1939, alleging that the defendants were making claims to the school lot that cast doubt, cloud and suspicion on complainants' title, and praying that every claim and interest of the defendants be cancelled as a cloud on their title to the lands described: Beginning at the NE corner of the SE¼ of SE¼, Section 21, T.8 North, R. 8 East, and run thence south, 120 yards to a point of beginning, thence west 210 feet, thence south 301½ feet, thence east 210 feet, thence north 301.5 feet to point of beginning. The bill alleges that the title has ripened in the school trustees by adverse possession of more than ten years to all the land included in this description, both as to that within and without the calls of the deed from Sam

Futch. There was an answer filed on the part of all of the defendants, except those against whom a decree pro confesso was taken. Defendant, Magnolia Petroleum Company, filed a disclaimer. There was a cross bill filed on the part of Hattie Lou Kelly and Jonse Kelly, and an answer thereto was filed by appellees. The cause was heard on its merits.

There was a decree for the complainants in the trial court finding that complainant trustees and their predecessors in office were for more than ten years preceding the commencement of this suit, in the continuous, uninterrupted, peaceable, open, notorious, hostile, exclusive and actual adverse possession of that certain lot or parcel of land in Scott County described as: Beginning at the northeast corner of SE¼ of SE¼, Section 21, Township 8 North, Range 8 East and run thence south 120 yards to point of beginning, thence west 210 feet, thence south 260 feet, thence east 210 feet, thence north 260 feet to point of beginning, claiming to own said land in fee simple and for school purposes so long as said land was used for school purposes; that the trustees were vested both by deed and adverse possession with title to the north acre of said lot, and, by actual adverse possession, with title to the 50-foot wide strip immediately south of said acre, subject to the limitations prescribed in the deed, and subject further to an easement acquired by the public to use a roadway extending in a northwesterly and southeasterly direction across said property, the same to be kept in its present location and condition and within its present boundaries.

Appellants have assigned nine grounds of error, but they all stem from the following: (1) The court erred in not requiring appellees to present the official minutes of the trustees of the school to show authority for filing this suit, as raised by the plea of the appellants. (2) The court erred in finding that appellees have a fee

simple defeasible estate in the land described in the final decree as a result of adverse possession. (3) The court erred in finding that the appellees have a fee simple defeasible estate in the land described in the final decree, or in any part of the land, because of actual adverse possession or adverse possession under color of title because there was no testimony of record to show that the land occupied by the school was included within the legal description of the land set out in the final decree.

We will consider these in the order above set out. It is contended by appellees that the trustees of the school had no authority to bring this suit unless and until the said trustees were authoried to do so, by order entered on the minutes of the boards of trustees. This question was raised by plea in the second answer of appellees. They based their contention on the holding in McGaha v. Curlee et al., 176 Miss. 671, 169 So. 694; Martin v. Newell, 198 Miss. 809, 23 So. (2d) 796; and Blodgett v. Seals, 78 Miss. 522, 29 So. 852.

This question, if it has any merit, and we do not here pass upon its merits, ██ ██ was raised by plea in bar by appellants. It is an affirmative defense, and the burden of proof rested upon the appellants to establish it by a preponderance of the evidence. Griffith's Chan. Prac., Sec. 360, p. 364. The testimony here was that these three trustees met at the schoolhouse to discuss whether this suit should be brought, voted to sue, and made a written record of the meeting which was turned over to the Negro supervisor who supervises all the Negro schools in Scott County, and who, at the time of the trial, was out of the state in Chicago and could not be procured to testify. The trustees could not remember who the secretary was, but said they had one, and Leonard Haralson, the oldest trustee, signed his name to the minutes. It is not necessary for us to here decide the question of whether or not it is necessary for the trustees of a common school district to keep written minutes,

for here the appellants have failed to meet the burden of proof and support with competent evidence the matter alleged in their affirmative plea.

As to the second assignment of error mentioned above, which is that the court erred in finding that appellees have a fee simple defeasible estate in the land described in the final decree, it is argued by appellant that there is no evidence in the record to sustain the decree of the lower court to the effect that appellees have a "fee simple defeasible estate" in that there is no record title in appellees, because the deed from Sam Futch is totally void. They base their contention (1) on the fact that the word "delivered" was omitted from the acknowledgement; (2) Sec. 269, Code of 1942, providing that all declarations or creations of trusts or confidence of or in any land shall be made and manifested by writing signed by the party who declares or creates such trust, or by his last will, in writing, or else they shall be utterly void; and every writing declaring or creating a trust shall be acknowledged or proved as other writings and shall be lodged with the clerk of the chancery court of the proper county to be recorded, and shall only take effect from the time it is so lodged for record; and (3) the decision in the Board of Trustees of M.E. Church South v. Odom, 100 Miss. 64, 56 So. 314.

The deed involved in this suit is good as between the parties, though defectively acknowledged, and does not declare or create any trust in the lands. A trust is an equitable estate, but the estate here conveyed is clearly a legal one. It is a deed conveying an estate in fee simple defeasible. Restat. "Property", Sec. 44, p. 129.

As to the third assignment of error mentioned hereinbefore: The court erred in finding that the appellees have a fee simple defeasible estate in the land described in the final decree, or in any part thereof, because of actual adverse possession or adverse possession under color of title, because there was no testimony to show

the land occupied by the school was included within the legal description of the land set out in the final decree.

The pleadings and the preponderance of the evidence in this record identify the land adversely occupied by the trustees both within and without the calls of the deed and as being the same land as legally described in the final decree rendered by the court below. The answer admits that the schoolhouse is on the one-acre lot described in the deed to the school trustees from Sam Futch. The Walnut Grove-Sebastapool public road was identified as being on the north and south section line. ██ ██ Sam Futch, himself, located the original acre and pointed it out on the ground as the acre described in the deed. When the erection of the present building was being considered, and some doubt arose as to wether or not they had a deed to the property, the trustees went to Sam Futch and asked for a deed to the lot where the schoolhouse stood, and Sam Futch told them that he had already executed a deed to them to the school lot and that it was on record; and they went to Forest and there found the record. Sam Futch told B. A. Hamilton, and Hamilton so testified without dispute or objection, that the east and west settlement road leading from the old Sam Futch house to the Walnut Grove-Sebastapool road is the northern boundary of the acre. Belma Harrison testified, without objection, that the school is using and has been using for many years what is considered by him and all others to be the land described in the deed, showing thereby that the school's flag of ownership was flying continuously over the property, and was known to and recognized by all. With the settlement road as the north boundary and Walnut Grove-Sebastapool road as the east boundary of the one-acre lot conveyed by the deed of Sam Futch to the school trustees, and which one-acre lot is admitted by the answer to be the acre described in the bill on which the schoolhouse is located, the intersection of the south boundary of the settlement road with the west

boundary of the Walnut Grove-Sebastapool road, necessarily locates the northeast corner of the one-acre lot. as the intersection of the two above mentioned boundaries. It is then an easy matter to locate the other two boundaries of the one-acre lot and the adjacent additional area adversely occupied with reference to the governmental subdivision.

As is usually the case, the facts with reference to the adverse possession were conflicting in this case. Appellant's testimony was to the effect that the school's possession was permissive and in recognition of the title of Sam Futch and his heirs. But the testimony for appellees clearly supported their contention that the school's possession was adverse and under claim of ownership within the limitations of the deed. The learned chancellor below found the evidence to preponderate in favor of the claims of the appellee, and we cannot say from the record that he was manifestly wrong. In fact, the record convinces us he was manifestly correct in his holdings.

The decree of the lower court is affirmed.

Affirmed.