435 So.2d 683 (1983)
Augusta COTTON and Mamie Little, Appellants,
v.
T.W. McCONNELL, Myrtle Horner and Hattie Jane Huggins, Appellees.
No. 54228.
Supreme Court of Mississippi.
July 27, 1983.
Eddie J. Briggs, DeKalb, for appellants.
Walter T. Rogers, Meridian, for appellees.
Before PATTERSON, C.J., and ROY NOBLE LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
On May 8, 1980, Augusta Cotton and Mamie Little, complainants below and appellants here, executed a quitclaim deed conveying unto T.W. McConnell, Myrtle Horner and Hattie Jane Huggins, their interest in approximately 400 acres of land in Kemper County. Thereafter, Cotton and Little brought this action in the Chancery Court of Kemper County charging that the deed had been procured by fraud, or, in the alternative, that it was a forgery.
After trial on the merits, the Chancery Court held that, under the facts and circumstances *684 of this case, the charge of fraud could not be sustained unless proved by clear and convincing evidence. The Court then found that Cotton and Little had failed to sustain their burden. Thereafter, the Court rejected the forgery charge, finding as a fact that Cotton and Little had indeed signed the quitclaim deed. A final decree was entered which provided, inter alia, that as between the parties the quitclaim deed of May 8, 1980, constituted a valid conveyance.
Cotton and Little have perfected their appeal to this Court. They assign as errors the rulings of the Chancellor on the fraud and forgery issues. For the reasons set forth below, the decree of the Chancery Court must be affirmed.

II.
The property in issue has at all times been held by various members of the family of which all parties hereto are a part. At one time the property was owned in part by T.W. McConnell and Myrtle Horner, as well as other members of their family, as tenants in common. By conveyances of May 3, 1944, McConnell, Horner, Oder Morris and others, brothers and sisters all, conveyed their individual interests in the property to Willie McCallum. Thereafter, McCallum died intestate leaving as his sole surviving heirs, two daughters, Augusta Cotton and Mamie Little, the appellants here. Though the exact relationships are not made clear in the record, it is apparent that all parties to this action are kin. Mamie Little, age 75, and Augusta Cotton, age 78, and Myrtle Horner, age unknown (but apparently equally elderly), are sisters. Oder Morris is the deceased sister of McConnell and Horner. Hattie Jane Huggins, the third grantee in the deed, is the daughter of Oder Morris.
On Thursday, May 8, 1980, McConnell and Horner appeared at the separate residences, first, of Augusta Cotton and, second, of Mamie Little. Neither had seen Cotton nor Little for many years. They had given no advance notice of their visit. They brought with them the quitclaim deed in question. They asked and obtained the signatures, first of Cotton and then of Little.
Viewing the evidence favorably to McConnell and Horner, we find a simple and by no means incredible explanation of their motives. McConnell and Horner thought the 1944 deeds were timber deeds only. They had not understood that they had conveyed their interest in the fee. They asked Cotton and Little to execute the quitclaim deed to restore to McConnell and Horner and their deceased sister's daughter the interest each would have had if the 1944 deeds had been only timber deeds. McConnell and Horner represented to Cotton and Little that a mistake had been made in the 1944 deed. They asked Cotton and Little to execute the quitclaim deed to correct that mistake.
McConnell and Horner did not ask Cotton and Little to divest themselves of all interest in the land. They sought reconveyance only of that they believed rightfully to belong to their side of the family. They presented to Cotton and Little a pre-prepared quitclaim deed wherein Cotton and Little would convey only
"the undivided interest of said Grantees [McConnell, Et Al.] which was conveyed by virtue of those deeds appearing of record in Book 53 at Page 538 and in Book 53 at Page 427 [the 1944 deeds] of the land records of Kemper County, Mississippi, ... ."
T.W. McConnell testified that he explained the deed to Mamie Little. Little's response was that she would be glad to sign beCcause the taxes on the land were $200.00 a year and that she needed someone to help pay them.
Mamie Little testified that, when McConnell, Horner and the others presented her with the paper to sign, they did not tell her what the paper was and she did not know what she was doing. Little testified that the signature on the quitclaim deed, which was displayed to her in court, was not in her handwriting but that it is possible she could have signed it.
*685 Augusta Cotton testified that she also was not told what the paper or papers were but that she signed because she thought it would help. Cotton testified the signature on the quitclaim deed was not hers, but that, if the deed displayed to her in court was the same paper that McConnell and Horner brought her to sign, the signatures could be hers and Mamie Little's.
Both Cotton and Little testified that they are able to read but neither read the paper they signed. Further, neither alleged any acts of misrepresentation on the part of McConnell or Horner. Augusta Cotton's son-in-law, who was present when she signed the paper, testified he did not find the visitors trying to trick or defraud Ms. Cotton into signing something she didn't want to sign. The testimony on behalf of McConnell and Horner established that the quitclaim deed was read to Cotton and Little and, as indicated above, the nature and purpose of the conveyance was fully explained.
At the conclusion of the trial, and after applying the appropriate rules regarding the burden of proof, the chancellor resolved all fact issues in favor of McConnell and Horner.

III.

A.

1
We are faced here with the shopworn and almost invariably unsuccessful challenge to a chancellor's findings of fact. We say "almost invariably unsuccessful" because our scope of review is so limited. Findings of fact made by a chancellor may not be disturbed or set aside on appeal unless manifestly wrong. See, e.g., Anderson v. Watkins, 208 So.2d 573, 575 (Miss. 1968); Blakeney v. Blakeney, 244 So.2d 3, 4 (Miss. 1971); Richardson v. Riley, 355 So.2d 667, 668-669 (Miss. 1978); Culbreath v. Johnson, 427 So.2d 705, 707-708 (Miss. 1983); Cheek v. Ricker, 431 So.2d 1139, 1143 (Miss. 1983); and Griffith, Mississippi Chancery Practice, § 674 (2d ed. 1950). This is so whether the facts found be characterized as ultimate facts or as mere evidentiary facts.
These principles apply with particular force where the fact questions involve charges of fraud. Culbreath v. Johnson, 427 So.2d 705 (Miss. 1983) also dealt with charges of fraud and forgery in the procurement of a deed. In discussing our scope of review, we said:
Under established principles regarding our scope of review, see Blakeney v. Blakeney, 244 So.2d 3 (Miss. 1971), we are charged with examining the entire record. In so doing, that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact, must be accepted. Blakeney v. Blakeney, supra, 244 So.2d at 4. If there is substantial evidence to support the findings made by the trier of fact, those findings must be affirmed here. 427 So.2d at 707-708.
There is a corollary principle which should also be noted here. With respect to issues of fact where the chancellor made no specific finding, we are required by our prior decisions and by sound institutional considerations to proceed on the assumption that the chancellor resolved all such fact issues in favor of appellee. Harris v. Bailey Avenue Park, 202 Miss. 776, 791, 32 So.2d 689, 694 (1947); Cheek v. Ricker, 431 So.2d 1139, 1143-44 (Miss. 1983).

2
We emphasize the rule of law regarding the burden of proof applicable on both issues on this appeal. First, it is well established in this state that before a plaintiff may prevail on a charge of fraud, he must prove fraud by clear and convincing evidence. Alabama and V.R. Co. v. Kropp, 129 Miss. 616, 633, 92 So. 691, 693 (1922); Aponaug Manufacturing Co. v. Collins, 207 Miss. 460, 478, 42 So.2d 431, 436-437 (1949); Parker v. Howarth, 340 So.2d 434, 437 (Miss. 1976); Hamilton v. McGill, 352 So.2d 825, 831 (Miss. 1977); Clement v. R.L. Burns Corp., 373 So.2d 790, 795 (Miss. 1979); Mosby *686 v. Gandy, 375 So.2d 1024, 1028 (Miss. 1979).
The fact of forgery, by definition a form of fraud, must also be proved by clear and convincing evidence. McMahon v. McMahon, 247 Miss. 822, 836, 157 So.2d 494, 501 (1962); Culbreath v. Johnson, 427 So.2d 705, 707 (Miss. 1983).

B.
On the general fraud issue, the Chancellor's findings of fact are as follows:
The evidence here is only that they [Cotton and Little] did sign some papers; that they were told that the papers were about the land. The evidence of the defendants is that the documents were read to them before they signed them. It is clear from the testimony that both of the grantors [Cotton and Little] could read. One of the complainants [Little] called on her son-in-law for independent advice. There is nothing to show that they were forced to sign the document. There is nothing to show that they could not have had the opportunity to get all the independent advice they desired. There is no proof of any specific misrepresentations... .
The court is of the opinion that they [Cotton and Little] may have exercised poor judgment when they signed the instrument, but the court is further of the opinion that they have failed to prove an act of fraud on the part of the defendants by clear and convincing evidence.
This latter conclusion of the trial judge must be considered in light of the rule acknowledged in Fornea v. Goodyear Yellow Pine Co., 181 Miss. 50, 178 So. 914 (1938) to the effect that:
In the absence of fraud, deceit, or fiduciary relations of some kind, the court cannot relieve a person from the consequences of his acts merely because he has not acted prudently or diligently. 181 Miss. at 65-66, 178 So. at 918.
The Chancellor made no express finding of fact regarding McConnell and Horner's motives or reasons for seeking execution of the quitclaim deeds. Applying the rule approved in the Harris and Cheek cases cited above, we proceed on the assumption that the Chancellor credited McConnell and Horner's explanation, to-wit: That the 1944 deed was a mistake and that the quitclaim deed signed by Cotton and Little was to restore the title to the status that would be obtained had it not been for the 1944 mistake.
On the general fraud allegations, the court merely held that Cotton and Little had failed to sustain their burden of proof. On the forgery issue, the trial court's conclusions were even more forceful against Cotton and Little. After summarizing the evidence, the court stated:
From this evidence I find that the complainants [Cotton and Little] have failed to prove as they had the burden to do, that the signatures were forgery. I in fact conclude that they did sign the papers now in the record. They may have forgotten the details of the papers, but these were the ones presented to the court.
When the above findings  those expressly made as well as those we imply  are tested under our general rules regarding burden of proof and scope of review, they are seen to be unassailable. Suffice it to say that there is substantial credible evidence in the record, as to both Cotton and Little, that each signed the quitclaim deed in question, that prior to doing so each received an explanation of the reasons and purposes for this action, i.e., to correct an error going back to the 1944 deeds and to resettle within the family title to the property as it equitably should have been all along, that neither acted under compulsion or coercion, and that each signed the deed as her own free and voluntary act. There was further substantial credible evidence that Cotton and Little agreed that it was proper that the deed be executed and that each understood what she was doing. The fact that there is other evidence to the contrary, of course, is irrelevant here.

C.
We have before us here the cold record, together with the documents in question. *687 To be sure, with respect to the documents, the affidavit and quitclaim deed of May 8, 1980, we see exactly what the Chancellor saw. See Culbreath v. Johnson, 427 So.2d 705, 709 (Miss. 1983). But this case turns inexorably on the creditability of the witnesses. With respect to questions of law, it may be that nine Justices of this Court with adequate time for study and deliberation and with the invaluable opportunity to consult with, between and among themselves, are in a position to do a better job than the Chancellor. On questions of fact, however, we could have 100 Justices and several years to study this case and still not do as good a job as the Chancellor, the man on the scene. The fact determination, by its very nature, must be made by the man on the scene, for he "has an infinitely superior vantage point when compared with that of this Court, which has only a cold record to read". Culbreath v. Johnson, supra, 427 So.2d at 708. As correct as this may be in the ordinary case, it is even more so in fraud cases, cases where the Chancellor must not only resolve conflicts and find past facts but also must sense and smell the motives and purposes of the parties.
We are concerned here with four elderly people  Augusta Cotton and Mamie Little on the one hand and T.W. McConnell and Myrtle Horner on the other hand. Though each is literate, none of the four are well educated or sophisticated. None display any understanding or experience suggesting an unfair advantage or ability to overreach any other. From our review of the transcript, it is a fair statement that none are articulate. None of the four expresses himself or herself well. Lapse of memory and confusion permeate the testimony.
In this context, the Chancellor had one tough job. Yet he performed that job carefully and faithfully. His findings of fact are, on this record, beyond our power to disturb.

IV.
Cotton and Little further contend that the quitclaim deed is void for want of consideration. There is testimony in the record that McConnell tried to give Cotton and Little a dollar each because he had heard this was necessary to make the transaction binding and enforceable. That aside, the argument of Cotton and Little runs headlong into the rule we noted in Covington v. Butler, 242 So.2d 444 (Miss. 1970), that
in the absence of fraud, a voluntary conveyance of land cannot be set aside at the instance of the grantor because of failure of consideration. 242 So.2d at 447.
See also, Burnett v. Smith, 93 Miss. 566, 572, 47 So. 117, 118 (1908) ("A man of sound mind may execute a will or a deed from any sort of motive satisfactory to him, whether that motive be love, affection, gratitude, partiality, prejudice, or even a whim or caprice."); Longmire v. Mars, 124 Miss. 77, 84, 86 So. 753, 754 (1921); Campbell v. State Highway Commission, 212 Miss. 437, 443-444, 54 So.2d 654, 656-657 (1951).
Beyond that, this quitclaim deed, in the context of the facts of this case, is in the nature of a correction deed. As such, it is certainly valid and enforceable without further consideration.

V.
The quitclaim deed was acknowledged by a Tennessee notary public, having no authority on the premises. The acknowledgment, thus, was defective. McConnell and Horner's attempts to cure this defect have likewise come to grief. The Chancellor correctly held that the deed was not eligible for recordation, nor was it effective as to third parties. See Miss. Code Ann. § 89-3-1 (Supp. 1982).
It is settled law in this state that a deed defectively acknowledged may still be good between the parties to it. See Kelly v. Wilson, 204 Miss. 56, 63, 36 So.2d 817, 819 (1948); and Campbell v. State Highway Commission, 212 Miss. 437, 443, 54 So.2d 654, 656 (1951). The Chancellor held that, as between Augusta Cotton and Mamie Little, as grantors, and T.W. McConnell, Myrtle Horner and Hattie Jane Huggins, as grantees, the quitclaim deed of May 8, 1980, was wholly effective. In this he was correct, *688 and as on the other questions presented by this appeal, we affirm.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.