463 So.2d 1094 (1985)
Gary P. DUNGAN and Judy Dungan
v.
DICK MOORE, INC.
No. 54557.
Supreme Court of Mississippi.
February 13, 1985.
*1096 Ben Barrett Smith, D. Ronald Musgrove, Batesville, for appellants.
R.M.P. Short, Sardis, for appellee.
Before WALKER, P.J., and HAWKINS and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This brouhaha arises out of a secured transaction under which the seller has repossessed and sold a mobile home said, ineffectually, by the buyer to have 52 identifiable defects. The proceedings move from the unusual to the bizarre as at practically every step  service of replevin process, the purported redemption of the mobile home, the proceeding under what was formerly known as a writ of inquiry  errors were committed (although in fairness to the trial judge it readily appears that in these somewhat intricate areas of the law he received little or no help from counsel). In the end, having regard only for the points properly preserved for appeal and the assignments of error presented, the judgment below which is to the effect that the buyers are entitled to no damages as a result of the alleged wrongful repossession of their mobile home must be affirmed.

II.
On August 7, 1981, Gary P. Dungan and Judy Dungan, husband and wife, (sometimes hereinafter "Dungans"), purchased from Dick Moore, Inc., a corporation having its principal place of business in Memphis, Tennessee, (sometimes hereinafter "Moore"), one Del Rio mobile home. The Dungans were Defendants below and are Appellants here. Dick Moore, Inc. was the original Plaintiff below and is the Appellee here.
The Dungans made a downpayment of $5,860.00. The balance of the purchase price was financed via a mobile home retail installment contract executed between Moore and the Dungans and providing for the payment of the unpaid balance of $14,089.76 in 95 monthly installments of $288.72 each. The contract provided that Moore held a security interest in the mobile home to secure performance by the Dungans of their obligations under the retail installment contract.
Shortly thereafter, the Dungans took delivery of the mobile home and occupied it as their place of residence near Enid in rural Yalobusha County, Mississippi. After the Dungans had made only one of the installment payments called for by the contract, a dispute arose between the parties regarding the condition of the mobile home. The Dungans stopped making their monthly payments and claimed that there were at least 52 identifiable defects in the mobile home for the repair of which Moore was responsible. Moore denied this but nevertheless attempted to make repairs. As a result neither party has been satisfied, and, indeed, they have gravitated to the point where a barely civil state of warfare exists.
By February of 1982, the Dungans were six months in arrears in their payments. Invoking rights secured to it by law and by its agreement with the Dungans, Moore took steps to enforce its security interest.[1] *1097 On February 17, 1982, Moore commenced this civil action by filing its complaint for replevin in the Circuit Court of Yalobusha County, Mississippi. The record reflects that prior to this time the Dungans had moved out of the trailer and were living in rental housing in Memphis.
On March 1, 1982, the Circuit Court entered a default judgment in favor of Moore and against the Dungans in the replevin action. Shortly thereafter, Moore physically obtained possession of the mobile home and moved it to Memphis. On March 30, 1982, Moore sent a registered letter to the Dungans advising them of the amount owed and indicating that liquidation was imminent. Immediately thereafter, the Dungans filed a motion to set aside the default judgment. They did not, however, seek to enjoin or restrain the sale. Despite actual knowledge that the default judgment in replevin was being contested, Moore sold the mobile home on April 9, 1982, for the sum of $11,200.00.
Some two months later the motion to set aside the default judgment was heard. At the hearing it developed that the process upon which the judgment had been predicated was defective. On May 31, 1982, the Circuit Court entered its order vacating the default judgment the effect of which was to reinstate Moore's original complaint for replevin. That matter was then set for hearing on its merits on June 3, 1982.
Prior to the June 3 hearing, the Dungans, purporting to act under the authority of Miss. Code Ann. § 89-1-59 (Supp. 1984), tendered to Moore all amounts due and owing as of that date under the retail installment contract. The Circuit Court regarded this tender as having redeemed the mobile home and, on June 14, 1982, entered an order dismissing Moore's complaint for replevin and further provided, in pertinent part:
10. That the Plaintiff [Dick Moore, Inc.] shall return, within five (5) days of this date, unto Defendants the 1981 Del Rio 80" OVA 76" FLR x 14, 3T2 Twimscs 11354 Mobile Home which was taken from Defendants by Plaintiff on or about 8 March 1982.
11. That in the alternative, if Plaintiff fails to return Defendant's [the Dungans] 981 Del Rio 80' OVA 76" FLR x 14 3T2 Twimscs 11354 Mobile Home, the Court order Plaintiff to pay unto Defendants the reasonable value of said Mobile Home.
The June 14, 1982 order further provided that a hearing would be held via a writ of inquiry to determine what damages may have accrued to the Dungans.
The mobile home which was the subject of the contract was, as indicated above, a 1981 Del Rio mobile home. The testimony was undisputed that when repossessed it was in a damaged condition although who was responsible for the damage was hotly disputed. In any event, within five (5) days of the June 14, 1982 order, Moore tendered to the Dungans a new 1982 Del Rio mobile home of the same size, shape, design and floor plan, and comparably furnished and equipped. It is undisputed that the 1982 mobile home tendered was in better condition and was of greater value than the 1981 home. This tender was refused by the Dungans.
The hearing[2] on the matter of the Dungans' damages was held in the Circuit *1098 Court of Yalobusha County, Mississippi, on August 18, 1982. At that hearing the Dungans established that between February and June of 1982 they had been living in Memphis and had been paying a monthly rental of $270.00. They had also incurred a charge for the storage of furniture in the amount of $26.00 a month. The Dungans offered no testimony that they had moved out of the home because it was uninhabitable or because of Moore's alleged failure to make requested repairs.
Following the hearing the Circuit Court entered its order finding as follows:
The Defendants had moved out of the trailer prior to the replevin action and were living in Memphis, Tennessee.
Plaintiff, Dick Moore, Inc., offered to replace the mobile home that was replevined and sold with a new 1982 model mobile home, within the time frame of the Court's order dated June 14, 1982.
Defendants refused to accept such offer of Plaintiff.
The Court then found and held that the Dungans had "totally failed to prove any damages" and dismissed the writ of inquiry. From that order the Dungans have perfected the instant appeal.

III.
The events leading up to the hearing, which is the subject of this appeal, reflect a more than modest misunderstanding of the law on the part of everyone involved. A reference to a few basics is necessary.

A.
The Dungans granted to Dick Moore, Inc. a security interest in the original mobile home. In relevant part, this transaction is governed by Article 9 of the Uniform Commercial Code. While we recognize that an argument could be made that Tennessee's version of the UCC could be made applicable, the parties throughout seem to have conceded that Mississippi law should govern and, accordingly, we will proceed by reference to Article 9 of the Mississippi UCC. Miss. Code Ann. §§ 75-9-101 et seq. (1972).
The Dungans made one payment on their obligations to Moore and stopped payment on the check for the second. By February of 1982, the Dungans were six months in arrears. Under such circumstances, Moore had a right to the possession of the mobile home. Miss. Code Ann. § 75-9-503 (1972).
Moore's entitlement to possession is a matter of substantive right emanating from the application of the provisions of Section 75-9-503 to the fact of the failure of the Dungans to make the payments required in the note. The UCC provides that one procedure whereby the secured party such as Moore might obtain possession is "by action", in this instance by an action in replevin. Miss. Code Ann. § 75-9-503 (1972); see General Electric Credit Corp. v. Fred Pistone, Jr., Inc., 68 Misc.2d 475, 326 N.Y.S.2d 898 (1971). The statute also provides that a secured party may proceed without judicial process if this can be done without breach of the peace.
On March 8, 1982, Moore obtained possession of the mobile home. A secured party after default may sell the collateral by public or private proceedings. Miss. Code Ann. § 75-9-504(1) and (3). Moore immediately gave notice to the Dungans of its intention to sell the mobile home. The Dungans acknowledged that they received this notice. The mobile home was subsequently sold by Moore for $11,200.00. The Dungans have in no way suggested any deficiency in the sale proceedings or any other violation of their rights accorded by § 75-9-504 or any other provision of Article 9 of the UCC. The sale was held on April 9, 1982.
*1099 An aspect of the point bears emphasis. The Dungans sought to vacate the default order for a replevin because of a defect in process. That defect called into question Moore's procedural right to possession of the mobile home under the replevin statutes only. Moore's substantive right to possession of the collateral existed by virtue of Part 5 of Article 9 of the Mississippi Uniform Commercial Code, and, more particularly, Section 75-9-503. If the Dungans had substantial rights to avoid the repossession and sale of the mobile home, it was incumbent upon them to move to enjoin the sale or otherwise assert the basis of those rights prior to March 30, 1982  the deadline fixed by Moore in the notice of sale.
The record reflects that a hearing was held, on May 30, 1982, on the Dungan's motion to set aside default judgment, although no transcript of those proceedings has been furnished to us (as no assignment of error here is predicated thereon). That hearing, of course, was held some fifty days after Moore had sold the mobile home. There is nothing before us to indicate that the Dungans made any contest of Moore's substantive right to the possession of the mobile home under Section 75-9-503. To be sure, Moore had notice of the pending motion to vacate when it conducted the sale and in a sense proceeded at its own risk. The risk Moore ran, however, was that there might be a subsequent judicial determination that, as a matter of law, Moore was not entitled to possession of the mobile home. A mere defect in the procedure whereby Moore acquired possession unaccompanied by a showing of the lack of any substantive defense on the part of the Dungans should have been ineffective to undergird the order of June 3, 1982, that the mobile home be returned to the Dungans.

B.
Prior to the June 3, 1982 hearing, the Dungans attempted to redeem the (already sold) mobile home, invoking the provisions of Miss. Code Ann. § 89-1-59, and for reasons not wholly apparent the trial court allowed the redemption. There are at least two problems with the trial court's action. First, Section 89-1-59 allows redemption only if the proper sums are tendered
at any time before a sale be made under the terms and provisions of such instrument [deed of trust, mortgage or other lien] ... [Emphasis supplied]
Any right to redeem under Section 89-1-59 thus expired on April 9, 1982.
There is a more basic problem. Redemption of personal property subject to a security interest is governed by Article 9 of the UCC. Miss. Code Ann. § 75-9-506 (1972). Section 89-1-59 applies only to secured installment transactions which are not covered by the Mississippi Uniform Commercial Code. The UCC provision, Section 75-9-506, however, makes a substantially similar requirement that the redemption sums be tendered by the debtor "at any time before the secured party has disposed of collateral... ." In any view, any right to redeem the Dungans had expired April 9, 1982.
In this context the Dungans purported redemption, on June 3, 1982, would appear to have been wholly ineffective. Furthermore, the replevin proceedings may well have become moot. Remembering that the replevin action was merely a procedure for the enforcement of a substantive right existing under other law, a mere defect in that procedure should not operate to divest Dick Moore, Inc. of its substantive right. The Dungans filed nothing with the court which in any way suggests that they have, or ever had, any defense to Moore's substantive right to repossess the mobile home under Miss. Code Ann. § 75-9-503 or its right to sell it under § 75-9-504. There is much talk in the briefs and in argument to the effect that the mobile home was defective and that this constituted a breach of a warranty said to have been imposed upon Moore. The implied suggestion is that this may have afforded the Dungans a defense on the contract. The point, however, has never been expressed by the Dungans *1100 in pleadings nor was it made the subject of proof nor a finding by the trial judge nor is it incorporated into any point raised on this appeal.
Whether Dick Moore, Inc. could, after April 9, 1982, have had the replevin proceedings dismissed as moot, however, is not before us. Though the basis for its so doing is highly dubious, the trial court allowed the redemption and entered the order of June 3, 1982, from which Dick Moore, Inc. has taken no appeal.

IV.

A.
Turning to the issues tendered via the Dungans assignments of error, we are faced here with an unsuccessful trial litigant's challenge to the findings of fact made by a trial judge sitting without a jury. Such findings may not be disturbed on appeal provided there is in the trial record substantial supporting evidence. It matters not that on the same proof we as trial judges might have found otherwise. The findings of fact made by a trial judge sitting without a jury may not be disturbed or set aside on appeal unless manifestly wrong. See, e.g., Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983); Culbreath v. Johnson, 427 So.2d 705, 707-708 (Miss. 1983).
There is a corollary principle which is also important here. With respect to issues of fact where the trial judge made no specific finding but where a determination of such issue was arguably necessary to the ultimate resolution of the case, we are required by our prior decisions and by sound institutional considerations to proceed on the assumption that the trial judge resolved all such fact issues in favor of appellee. Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983); Harris v. Bailey Avenue Park, 202 Miss. 776, 791, 32 So.2d 689, 694 (1947).
These rules governing our scope of review well in mind, we note the Dungans' insistence that the evidence was undisputed that they had incurred damages in the form of four months rent at $270.00 per month and four months storage of furniture at $26.00 per month. True, the evidence to that effect is undisputed. The trial judge, however, found as a fact that the Dungans had moved out of the mobile home and were living in Memphis, Tennessee, "prior to the replevin action". This fact is well within the evidence. Indeed, the Dungans never denied it.
It is true that the trial judge made no finding regarding the reason the Dungans moved out of the mobile home and moved to Memphis. Under the principles cited above from the Cotton and Harris cases, we must presume the trial judge regarded that the Dungans moved out of the mobile home for a reason other than one which would render Moore liable for their rental and storage expenses.
Continuing in the same vein, the Dungans are faced with the trial court's mixed findings of fact and conclusions of law that they "totally failed to prove any damages". The order of the trial court does not explain fully the basis of this conclusion. Within the evidence and the findings which were made, the trial judge's conclusion could be predicated (a) upon the premise that the rental and storage expenses incurred by the Dungans were not the proximate result of any breach of any duty owed by Moore to the Dungans or (b) upon the premise that the Dungans had failed to make the payments required under the contract, failed to establish a justifiable excuse therefor, as a result of which Moore was under the contract entitled to possession of the mobile home and as a result of which the Dungans would have no right to recover rental and storage expenses from Moore.
In any event, the trial judge's findings, both the overt and the inferred variety, to the effect that the Dungans suffered no damages were well within the evidence.

B.
Much is made both in the briefs and at oral argument of the fact that Moore failed *1101 to deliver the original 1981 mobile home within the five (5) days time frame provided in the June 14, 1982 order. That the trial judge let Moore get away with tendering a new 1982 mobile home instead of the old broken down 1981 model is assigned as error.
It is true that the order, of June 14, 1982, ordered Moore to within five (5) days (a) either return the 1981 mobile home or (b) pay to the Dungans "the reasonable value of said mobile home". Because Moore had sold the 1981 home, he tendered a new 1982 mobile home. The Circuit Court's order of November 2, 1982 makes it clear that the Court regarded this tender as having been in substantial compliance with the June 14, 1982 order.
It is true that the 1982 mobile home tendered did not exactly fit the terms of either of the alternatives provided in the June 14, 1982, order. It is likewise true, however, and wholly undisputed by the Dungans that the new 1982 mobile home (a) was of greater fair market value than the 1981 home, (b) was in a better condition in the sense that it did not have the damages or defects of the 1981 home, (c) contained the same design, shape, features, furniture and equipment as the 1981 home, that is, there were no homely amenities pertaining to the 1981 mobile home that were not also available with the new 1982 mobile home, and (d) carried the same warranties as were given with the 1981 home.
In other words, what was tendered to the Dungans in mid-June of 1982 was a mobile home better and more valuable than the one that they previously had and was subject only to the terms and conditions that had been applicable to the repossessed mobile home. The tender was rejected and, as became apparent at oral argument, the reason was that the Dungans were not nearly so much interested in having a satisfactory mobile home to which they were certainly entitled under the original August 7, 1981 contract as they were in maintaining what they perceived as a good juicy lawsuit.
The Dungans' precise assignment of error here is the purported failure of the Circuit Court to follow its order of June 14, 1982. In the face of proof that what was tendered was in kind the same as that to which the Dungans were entitled under the June 14 order and was of even greater value than that to which they were entitled, we find no basis for affording the Dungans any relief. The circuit judge who entered the June 14, 1982 order was certainly more aware than anyone else what it meant and we regard it as wholly within his prerogative to determine that this order had been complied with by the tender of the new 1982 mobile home.
Beyond that, the Dungans complain that the order of November 2, 1982, had the effect of voiding the original retail installment contract. This notion we can only assume is predicated upon the fact that the order allowed the Dungans to withdraw the money they had put up in escrow. The net effect of the aftermath of the trial proceedings was that the Dungans were without a mobile home and were out some $6,000.00 for the downpayment and the one monthly payment they had made. This predicament, however, was of the Dungans own making for they were tendered a perfectly usable mobile home which to any rational person would have been more valuable and desirable than the one originally sold to and occupied by the Dungans but they refused it; which only goes to prove that in lawsuits as elsewhere you can lead a horse to water but you can't make him drink.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] As an incident to the closing of the retail installment sale and secured transaction back on August 7, 1981, Gary P. Dungan had executed and delivered to Moore a Landlord's Waiver which, in pertinent part, provided:

... in the event that it becomes necessary, under the terms of the aforementioned instruments, for the Company [Moore] to take possession of the said merchandise and any accessories pertaining thereto, then the Undersigned [Dungan] will make no objection to the removal of the said merchandise from the premises, nor to the performance of whatever acts are necessary for such removal with the use of such facilities as may be on the premises.
[2] The hearing which is the subject of this appeal was held in the Circuit Court on August 18, 1982, pursuant to the Dungan's motion for writ of inquiry filed following entry of the June 3, 1982, order which had ordered Moore to return the mobile home or its value to the Dungans. Inasmuch as this action was commenced on February 17, 1982, it is wholly subject to the Mississippi Rules of Civil Procedure. Rule 81(e) provides generally that writs as forms of proceedings have been abolished, effective January 1, 1982, and that the "forms of relief formally obtainable under writs ... shall be obtained by motions or actions seeking such relief".

Although technically there has been no such thing in Mississippi as a writ of inquiry since January 1, 1982, here as elsewhere we will overlook errors in nomenclature and concern ourselves with the substance of the matter. Where under our prior practice the procedure of a writ of inquiry would have been appropriate, parties may now obtain the relief formally obtainable by filing motions or commencing actions seeking such relief. We will treat the motion for writ of inquiry filed July 26, 1982 as though it were a motion for assessment of damages and we will treat the hearing of August 18, 1982 as though it were a hearing held upon the Dungan's motion for assessment of damages. See Rule 55(b), Miss. R.Civ.P.